Battle, J.
 

 The first question which arises on the bill of exceptions filed by the defendants, is whether the Neuse river was a navigable stream at the place where the alleged offence was committed.
 

 ' It is now well settled that the rule adopted in England by which navigable waters are distinguished from others, to wit, the ebb and flow of the tides, is entirely inapplicable to our situation, and, therefore, has been abrogated.
 
 Wilson
 
 v.
 
 Forbes,
 
 2 Dev. Rep. 30 ;
 
 Collins
 
 v. Benbury, 3 Ire. Rep.
 
 277 ;
 
 S. C., 5 Ire. Rep. 118 ;
 
 Fagan
 
 v. Armstead, 11 Ire. Rep. 433. No precise criterion for determining the question in this State has, as yet, been established by our Courts. In
 
 Wilson v.
 
 Forbes, Henderson, J., said, “ What general rule shall be adopted, this case does not require me to determine, were I competent to it. But I think it must be admitted that a creek or river, such as this appears to be, wide and deep enough for sea-vessels to navigate, and without any obstruction to this navigation from its mouth to the ocean, and the limit of whose waters is not higher, nor as high, as the flowing of the tides upon our sea-coasts, is a navigable stream within the general rule.” In
 
 Collins v.
 
 Benbury, as reported in 3rd Ire., RuefiN, C. J., said, “ Any waters which are sufficient in fact to afford a common passage for all people in sea-vessels, are to be taken as navigable.” We are not aware that any more precise rule has been elsewhere laid down.
 

 Whether the river Neuse, between the port of Newbern, in Craven County, and the town of Smithfield, in Johnston County, which is stated to be navigable, for eight months in the year, for flat-boats and small steam-boats, comes within the
 
 *111
 
 terms of tbis rule; or whether the rule can be extended by analogy to embrace it, we need not enquire. The Legislature has the undoubted right to declare it to be a navigable stream, and, we think, that has been done, either directly or inferentially, by tliefollowing acts: First, the act of 1812, (ch. 849 of the Rev. of 1820,) entitled an act for the opening and improving the navigation of Neuse river, created a company for that purpose, and, in the 4th section, gave it power “ to contract for the opening and improving, or otherwise cause to be opened and improved, the navigation of Neuse river, from the present head of boat navigation therein below Lock-hart’s Falls, westward to Crabtree. Falls,” &c. Secondly: By the 5th sec. of 103rd chapter of the Revised Statutes, taken from the act of 1823, (ch. 1197 of Taylor’s Rev.) the justices of the several County Courts of Johnston, 'Wayne, Lenoir and Craven, were authorised to lay off the inhabitants on both sides of the river Neuse, above Spring Garden, into convenient districts, with the view of removing
 
 “
 
 all brush and other obstructions to the navigation ” of that river.
 

 Thirdly: The act of 1848, ch. 82j sec. 51, appropriated forty thousand dollars “for the purpose of cleaning out and improving the navigation of the river Neuse, between the town of Newbern and the town of Smithfield.”
 

 Fourthly and lastly : The act of 1850, chapter 112, after reciting the appropriation made in the preceding act of 1848, created the company styled the
 
 “ ‘
 
 Neuse River Navigation Company,’ for the more full and complete accomplishment of the object of effecting a more certain navigation of the river Neuse, between the town of Newbern, in the County of Craven, and Watson’s landing, above Smithfield, in the County of Johnston.”
 

 The Neuse river having been thus recognised as a navigable water, the defendants had the right, in common with all other citizens, to navigate it with their boats, and, as an incident to such right, to remove all obstructions not put there by or under the sovereign power. It is admitted that the sovereign power in the present case, is the General
 
 *112
 
 Assembly of the State. It would have been the general government, bad the Congress of the United States passed any act relating to tbe river Nense in execution of the power “ to regulate commerce with foreign nations, and among the several States.” Con. of U. S., Art. 1, sec. 8.
 
 Wilson
 
 v.
 
 Black Bird Creek Marsh Company,
 
 2 Peters’ 248 ; (8 Curtis 105.)
 

 This raises, upon the record, the second main question in the cause — whether the bridge, for the removal of which the defendants are indicted, was erected and kept in the condition in which the defendants found it, by, or under, the authority of the General Assembly of the State.
 

 In the argument of this question, the counsel for the State contended, that the Legislature had full power to authorise the erection of a bridge over any part of the river Neuse, either by a direct act of legislation, or by conferring the power to do so on the County Courts of the respective Counties through which the river runs; that, by the 22nd section of the 104th chapter of the Revised Statutes, taken from the Act of 1784, (ch. 227 of the Rev. of 1820,) the power was conferred upon the County Courts; that the County Court of Johnston, under the authority thus conferred upon it, did cause the bridge in question to be erected, and that, therefore, it was not a nuisance which the defendants had a right to abate.
 

 The counsel further contends, that the 28th section of the same chapter of the Revised Statutes, taken from the Act of 1806, (ch. 706 of the Rev. of 1820,) applies only to toll bridges erected by owners of ferries, and that the draws which such owners are commanded to put in their bridges are not required in those erected by the County Courts under the former law. Erom an examination of the provisions of the acts referred to, whether in their original state, or as revised in the revisal of 1836, we are satisfied that the County Courts were not authorised by the 22nd section of the 104th ch. of the Revised Statutes, (which is the 5th section of the Act of 1784,) to build bridges over large and navigable streams. It is clear that small streams only were intended by that sec
 
 *113
 
 tion — -streams, though small, yet too large to be bridged by the overseers and their assistants, and, therefore, requiring the aid of the County funds.
 

 Tliis will be made manifest by a reference to the 4th and 7th sections of the same Act of 1784, which form the 14th and 26th sections of the 104th chapter of the Revised Statutes. By the last clause of the 4th section it is evidently made the duty of the overseers of the public roads to build all “ necessary bridges through swamps and over small rivers, creeks, or streams.” The 7th section authorises the majority of the justices of the County Courts,
 
 “
 
 through whose Counties run largo water-courses or creeks, across which, from the rapidity of the water and the width of the stream, it may be too burdensome to build bridges and keep them in repair by a tax on the inhabitants, if they deem it necessary, to contract with builders to build toll-bridges or expensive causeways; for each of which each Court is hereby authorised and required to lay the toll on all persons, horses, carriages and cattle, passing over the same,” &c. These two sections provided for bridges over small and large water-courses, leaving it to the 5th to declare how and by whom fiiose of an intermediate size should be bridged, to wit, by the County Courts, at the expense of the several Counties., The act of 1806 applied, no doubt, as the counsel for the State contends, to the bridges authorised by the Legislature, to be built by the owners of ferries, and to none others. As the law stood then, under legislative enactments, bridges over small rivers, creeks or streams, were to be built by the overseers of the public roads,, with their assistants; those over rivers, or creeks, too large for the means of the overseers and their assistants, were to be built by the County Courts of the Counties through which they run, at the expense of the Counties; those over wide and rapid streams were to be erected as toll-bridges, under the order of the County Courts, by contractors, if a majority of the justices should deem it necessary; while toll-bridges might be built at ferries by the owners thereof. Of these different kinds of -bridges, the last only were expressly required to have
 
 *114
 
 a draw to admit of the passage of vessels through them. In the revisal of 1836, the enactments to which we have referred were brought together, and, with other provisions, were incorporated into one act, entitled, “ An Act concerning the public roads, ferries and bridges, in this State,” and forms the 104th chapter of the Be vised Statutes. By this incorporation, words and phrases, though generally retaining the sense in which they were used in the acts from which they were taken, acquire sometimes, necessarily, a different meaning. Thus a clause, which in the old act was, by its terms, confined to that, may, when employed in a revised statute, be extended, by the use of the same terms, into a wider signification. Among the clauses thus extended in their application, is the last in 28th section of the revised statute above referred to, which comes in under a proviso, and is in the following words:
 
 “
 
 In all such bridges, the proprietors shall erect a draw, where any water-course is frequently and commonly used by sea-vessels, or masted boats, of considerable burthen.” This proviso was, doubtless, in the act of 1806, confined to the owners of ferries, who had erected toll-bridges instead thereof. By a literal construction, it might seem to be confined to them in the revised statute, but as there is manifestly the same necessity for draws in the toll-bridges to be erected by contractors under the order of the County Court, we think it was the intention of the Legislature that it should embrace both. It is a fair case for the application of the maxim,
 
 qwi lmrct m litara hceret in cortica.
 
 Our opinion, then, is that all toll-bridges over navigable streams, whether built by owners of ferries or by contractors with the justices of the County Courts, must have proper and sufficient draws in them, and that the proprietors must keep the draws in good repair, so that they may alwaj’s answer the purposes of their erection whenever the exigencies of navigation may require it.
 

 But it is said by the counsel for the State, that the bridge now in question was not a toll-bridge at all; that it was built as a public bridge, under the authority of the County Court of
 
 *115
 
 Johnston, and that, therefore, there was no necessity for it to have a draw at all. To this the reply is, that the power of the County Courts over the subject of bridges, is a special and restricted one. It is manifestly proper that it should be construed as a special authority with regard to bridges across navigable water-courses, otherwise the free exercise of the paramount rights of navigation might be very materially hindered and obstructed. From the review which we have made of our enactments on the subject, it is apparent that the County Courts have no authority, given in express terms, to erect, or cause to be erected, draws in a public bridge across a navigable stream. Their power to do so, is to be inferred from the act which authorises them, if they deem it necessary, to have toll-bridges built by contractors. If they do not deem it necessary to order the building of such bridges by contractors, they may do it themselves out of the County revenues ; but in that case their bridges must, in favor of the right of navigation, have such draws as are prescribed for other bridges. Such seems to have been the opinion entertained by the justices of Johnston County Court of the extent of their power, when they erected the bridge which has given rise to this controversy. They had a draw fixed in it, but as they did not keep it in repair, the question arises, whether it did not thereby become a nuisance which the defendants had a right to abate. That it did, the case of
 
 Renwick
 
 v. Morris, 3 Hill’s (N. Y.) Rep. 621, is a strong authority. In that case it was decided, that where, under an act of the Legislature, giving to the defendants and their assigns, the right of erecting and maintaining a dam upon navigable waters, the dam was so built as to impede the navigation beyond what the act author-ised, it became
 
 pro tcmto
 
 a public, nuisance, and liable to be abated by any person; and further, that the remedy by abatement was, in all respects, concurrent with that by indictment. The principle is, that any unauthorised obstruction in a navigable stream, by means of a bridge, or a dam of any kind, is a public nuisance which any person may abate, and if it be put there under the authority of the sovereign, it will be pro-
 
 *116
 
 tectecl only so far, and so long, as it is confined within the limits of the authority. An analogous principle was laid down by this Court in the case of
 
 Meares
 
 v.
 
 The Commissioners of
 
 Wilmington, 9 Ire. Rep. 81, to wit, that a public or municipal corporation is liable for doing a work, which the law authorised to be done, if done in an unlawful and unskilful manner, so that an individual is injured thereby.
 

 In the case which we have under consideration, if the bridge had been a toll-bridge, built by the owner of a ferry, under authority vested in him by law, or by a contractor, under the authority of the County Court, it would Undoubtedly have become a nuisance, liable to abatement as soon as the draw had, from decay or want of repair, failed to answer its purpose. The special authority to build the bridge with a draw, and to keep the same in good order, would not have protected its owner longer than the terms of the authority were observed. So, a public bridge, built by the justices of the County Court, across a navigable water-course, must be subject to the same conditions and restrictions. As agents of the Legislature, the justices, sitting tin Court, could do nothing beyond what their principal had authorised. They were not empowered to do anything which might impede the free navigation of Neuse river, and it followed, as a necessary consequence, that when their biidge became an obstruction to navigation, it was a nuisance which the defendants, or any other person, had a right to abate. See Angel on Tide waters, 115.
 

 The judgment must be reversed, and a
 
 venire de novo
 
 awarded.
 

 Pee CueiaM. Judgment reversed.