STATE v. DANIEL N. McIVER.

*Roads—Indictment for obstructing—Appropriation of private property to public use.*

1. The defendant was convicted for obstructing a public highway, where it appeared that the same was established by a regular proceeding instituted for that purpose; the defendant was appointed and acted as overseer for one year, but failed to open the road; his successor did open it, and in so doing removed the fences which crossed it on the defendant's premises; the defendant replaced these fences, thereby obstructing the road; *Held,* that the conviction was proper.

2. The rule in this state in reference to the appropriation of private property to public use, is, not that the compensation to the owner shall precede the act of appropriation, but that provision shall be made by which he shall certainly and ultimately be paid.

(*State* v. *Watts,* 10 Ired., 369; *State* v. *Lowry,* 74 N. C., 121; *R. R. Co.* v. *Davis,* 2 Dev. & Bat. 451, cited and approved).

INDICTMENT for obstructing a highway tried at Fall Term, 1882, of MOORE Superior Court, before *Gilmer, J.*

The defendant is indicted for obstructing a public highway, in the county of Moore, leading from Sanford to the Cool Springs. On the trial the jury returned a special verdict as follows, and asked the instruction of the court thereon:

In 1879, a petition for the establishment of said road as a public highway was filed before the board of commissioners for the county, and at their March meeting in that year, seven freeholders were appointed to view and lay off the same. Five of the freeholders met on the 12th day of April, 1879, and proceeded to examine the route and mark out the road, and made report thereof to the May meeting of the board, when the same was approved.

In August of the same year, the board of commissioners appointed one D. B. McIver to build a cattle-guard near the defendant's premises (and across the track of the Cape Fear & Yadkin Valley railroad), at a cost not to exceed the sum of thirty-five dollars, which cattle-guard has never been built by any one.

In January, 1881, the freeholders originally appointed to lay off the road, met upon the land of the defendant and proceeded to assess his damages by reason of the establishment of said highway, and fixed the same at the sum of twelve dollars. The defendant was present at this assessment, and agreed to the amount, but insisted that the county should build the cattle-guard as proposed, and thereupon he was informed by some one of the freeholders that the county had provided for the same, and that he was not expected to pay for it out of the sum assessed to him as his damages. This action of the freeholders was afterwards approved by the board of commissioners, and the sum assessed allowed by them, though it did not appear that the same had ever been paid.

The defendant was thereupon appointed overseer of said road and acted as such for one year, but failed to remove the fences upon his own land which crossed the same. During the year he made frequent appeals to the board to have the proposed cattle-

guard erected; and, failing in this, asked leave to so change the road as to lead to an old cattle-guard also upon his premises, when he was informed of the provision of the law for changing a highway when altogether upon one's own land.   He thereupon undertook to effect the change in that way, and had a justice and two freeholders to examine the new route and report the same to the commissioners of the county, who refused, however, to give it their approval.

Another overseer for the road was then appointed, who removed the defendant's fences from across it, when the same were replaced by him and maintained until the finding of the indictment.

Upon these facts thus established by the verdict, the court was of opinion against the defendant, and gave judgment against him, and he appealed.

*Attorney-General,* for the State.
*Mr. W. E. Murchison,* for defendant.

· RUFFIN, J.   The verdict, as rendered by the jury, is so indistinct as to many particulars, and so full of superfluous matter, that our first impression was that we should be compelled to set it aside and award a *venire de novo* to the defendant, such being the rule of this court whenever a special verdict is so defective that no judgment can be pronounced upon it.   *State* v. *Watts,* 10 Ired., 369; *State* v. *Lowry,* 74 N. C., 121.

But upon a more thorough examination, those facts, which we deem material to the issue between the state and the defendant, appear to be established with sufficient certainty to justify the court in acting upon them, and hence we have concluded to consider the cause upon its merits.

The material facts, as we conceive them to be, and which plainly appear upon the face of the verdict, are as follows: Upon a petition regularly filed before them, the commissioners of the county directed the road in question to be established as

a public highway, and appointed the requisite number of free-holders to lay out and mark its route. The designated free-holders, after performing this duty, made report thereof to the commissioners, who approved and confirmed the same. After-wards, the same freeholders proceeded to assess the defendant's damages by reason of the road, and fixed the same at twelve dollars, which action on their part was likewise reported to and approved by the commissioners. The defendant was appointed, and acted as overseer of the road for one year, but failed to open the same. Another overseer was appointed, who did open it, and in so doing removed the fences which crossed it upon the premises of the defendant. These fences the defendant after-wards replaced, thereby obstructing the road, and continued to maintain them, though forbidden to do so.

Whatever else is stated as touching the promise and failure on the part of the commissioners to construct the cattle-guard, and the attempt of the defendant to change the route of the road upon his own lands, seems to us to be surplusage, and wholly beside the issue.

Taking the facts enumerated as those which constitute the case, they come fully up to the requirements of the statute pre-scribing the manner of laying out public roads, and clearly and unequivocally show the road in question to have been estab-lished, as a highway, and leave no room to doubt the guilt of the defendant.

It was indeed contended at the bar, that inasmuch as it did not appear that the damages assessed had actually been paid to the defendant, it was not within the constitutional power of the county authorities to take his private property and devote it to the uses of the public. The argument is, that it is essential to the exercise of every right of eminent domain on the part of the sovereign, not only that just compensation should be provided for the owner of property taken, but that its actual payment must precede the act of taking, or else the latter is in itself illegal

87

and void. Such does not seem to be the result of the decisions in the courts of many of the states of the Union, growing, however, in most of the cases, out of the express provisions of their respective constitutions. But no such provision is to be found in the fundamental law of this state, and ever since the early case of *R. R. Co.* v. *Davis*, 2 Dev. & Bat., 451, it has been uniformly held, with us, not to be essential to the lawful appropriation of private property to public necessities, that compensation to the owner should precede the act of appropriation; but that it was sufficient if provision be made whereby the owner should be certainly and ultimately compensated, and an impartial tribunal be instituted for assessing the rate thereof, and a mode provided for enforcing its payment, if the same should be delayed.

Our general statute upon the subject of "Roads" fully answers to all these requirements of the law. It provides that the same jury, who shall lay off any highway, shall assess the damages done to all private persons, and that, when assessed, they shall become a *county charge* (Bat. Rev., ch. 104, § 4); and the jury find, as we have seen, that all its terms were faithfully complied with in this particular instance. The amount of damages done by the road to the land of the defendant was assessed by a jury, to whom he made no objection at the time, and being made by the law a charge upon the county, its payment, if not already made, may be enforced by a *mandamus*, as in the case of any other debt owing by the county.

Our conclusion, therefore, is, that the defendant is guilty upon the facts as set forth in the special verdict, and the judgment of the superior court is affirmed.

At the same time, we do not hesitate to say, that his case strikes us as a hard one. It is plain that the jury were misled by the order of the board, with reference to the cattle-guard, into fixing his damages at so small a sum, and while their mistake cannot be remedied by the courts, it is well for the commissioners to consider how a failure, under such circumstances, to carry out their order,

is consistent with fair dealing, or with that example of good faith which all persons in authority should set before the public.

There is no error. Let this be certified.

No error.                                            Affirmed.