(896) The indictment charges, that the defendant erected and maintained a house, for a long space of time, "upon a certain public square, in the town of Rockingham, in said (Richmond) County, known in the plan of said town as Washington square, and upon which the court house of said county is situated; so that the citizens of this State, in, upon and through said square, all that time, could not, nor can now, go, return, pass, and repass, as they ought and were accustomed to do, to the great damage and common nuisance," etc. *Page 747 
Upon his trial in the Superior Court of Richmond County, at Fall Term, 1885, he was found guilty, and from the judgment (897) rendered upon the verdict of the jury, he appealed.
Three grounds are assigned in support of the application for a new trial, as follows:
I. The admission of incompetent evidence of boundary.
II. The refusal to give instructions asked; and
III. Error in those given to the jury.
Numerous witnesses were introduced by the State and by the defendant, whose testimony was conflicting as to the true location of the boundaries of the square, and whether the defendant's house was upon any part of it. It was in evidence, however, that those under whom the defendant claimed, had enclosed under fence, and for many years had cultivated, the land upon which the house alleged to be an encroachment was built, some few years before the trial, by the defendant. In reference to the effect of this evidence, if accepted by the jury as true, the Court was asked to charge:
"If the defendant and those under whom he claims, had possession of the land covered by the defendant's store, adversely, continuously, and openly, for twenty years, next prior to the finding of the bill, excluding the time of the suspension of the statute of limitations, (May 20th, 1861, to January 1st, 1870), the defendant is not guilty."
"If the public, at one time had the right to use and enjoy the square, as a public square, yet if the part alleged to be covered" (an evident omission in the transcript, requiring to be inserted to complete the sentence, "was in possession of the defendant", or words of equivalent force), "and those under whom he claims, adversely, openly, and continuously, for twenty years, under a fence, next before the finding of the bill, excluding the time as aforesaid, the defendant cannot be convicted." (898)
The Court, in the instructions delivered, does not notice this part of the defendant's prayer, but in answer to others asked, told the jury, if the defendant's building did, in fact, encroach upon the square, whether the defendant believed, in putting it up, that he was so encroaching or not, he would be guilty of the offence imputed, and the two years statute, barring prosecution for such misdemeanors, had no application to this case.
A public square, such as this is described and shown to be, for the general public use, and as a means of access to the courthouse and other *Page 748 
public buildings, is substantially a highway, and is usually so charged to be in the bill. In the present case, such an averment is not directly made in connection with that description of the place, and if a public square, used for public purposes, in connection with the court-house and public county buildings, does not, ex vi termini, sufficiently designate it as possessing the character and incidents of a highway, so as to subject one who obstructs and prevents its use as such, to indictment, the defect is removed by a subsequent averment, that thereafter the citizens of the State "could not, nor can now, go, return, pass and repass, as they ought andwere accustomed to do", that is, as they before had a right to use the square as a highway, "to the great damage and common nuisance," etc.
Assuming then, that a criminal act has been sufficiently set out in the indictment, showing that the defendant, in erecting the house upon the square, exposed himself to prosecution for the offence, the question is presented, contained in the refused instructions, as to the effect of the alleged long previous and continuous possession of those under whom he claims, upon his, and the rights of the public, in reference to that portion of the square. Has it divested the estate of the county in the land, and put it in the occupant, or has it only extinguished the public easement or way over the land, or has it been ineffectual for either purpose?
In determining this appeal, it is only necessary to consider the (899) consequences of the long adverse occupation upon the public easement or right of way over the withheld premises, since if this has ceased to exist, the prosecution must fail. In obstructing the exercise of this public right, not in wrongfully withholding property from the owner, the offense, if any, has been committed by the defendant.
The earlier decisions, as to the effect of long user in raising a presumption of the original legal creation of highways by the action of the public authorities, or an accepted dedication by the owner of the soil,Woolard v. McCullough, 23 N.C. 432; and State v. Marble, 26 N.C. 318; are not in harmony with the ruling, as to their formation and existence, inKennedy v. Williams, 87 N.C. 6; which must be deemed the settled law on the subject. It is there held, that the assent of the public authorities, or a recognition and assumption of control by them over a road, as well as long adversary uninterrupted use of it, are necessary to its becoming a public highway, and this because without the consent of the proper authorities, manifested in some form, the burden of its reparation and maintenance cannot be imposed upon the public. *Page 749 
These considerations do not enter into the present controversy, for all essential conditions unite in establishing the present easement, and the only question is, as to its loss from non-user, by reason of defendant's occupation and exclusion of the public.
We are of opinion, that there was error in refusing to charge the jury, that if upon the evidence, they found the predecessors of the defendant, and himself, to have held continuous adversary possession of the place whereon his house now stands, for the prescribed period of time, thus forcibly depriving the public of all use of it, the public easement was lost, and the verdict should be for the defendant. In Crump v. Mims,64 N.C. 767, RODMAN, J., on behalf of the Court, in reference to the effect of a long continuous obstruction, such as that before us, says, "The burden is on the plaintiff to make good his claim, in derogation of the public right. No doubt, on a non-user of a public road for twenty years, an abandonment by the lawful authority (900) would be presumed; and so, after an acquiescence in an obstructionfor that time, of a right to continue it."
Perhaps, the mere non-user of a small portion of a public square, which people had no occasion to pass over, there being sufficient space left for that purpose, would not have the effect, and, in our opinion, does not have the effect, of impairing the public rights; but it is otherwise, when it is appropriated to one's sole use by surrounding fences, and this is acquiesced in and submitted to without resistance in any form, for a sufficient space to warrant the inference of an abandonment and surrender to the aggressor.
Thus says Mr. Washburn, in his treatise on Easements, 670: "And even a public easement in a high-way, may be lost by non-user. The law in such cases, presumes an extinguishment, by abandonment for a long time."
Nearly the same language is used by BIRCHARD, J., delivering the opinion in Fox v. Hart, 11 Ohio, 416. So, says BIGELOW, J., in Holt v. Sargent, 15 Gray, 102; assuming the legal existence of a high-way, which the plaintiff alleged to have been discontinued: "It was competent for the plaintiff to show in proof of this issue, that the alleged way had been shut up; the land enclosed by a permanent fence or wall and occupied or improved for purposes inconsistent with its use as a high-way, for a long series of years, and any other facts, sufficient to found a legal presumption upon, that the way had been discontinued by competent authority." The rule, and the reasoning in support of it, has application to an easement, as a servitude imposed upon land, the estate in which is vested in another, and as long use can establish, so may long continued disuse, forced upon the public by interposed obstructions, destroy the encountering easement, under the rule of *Page 750 
presumption. In Commonwealth v. Albright, 1 Whar. (Penn.) Rep., 468, the use of the square for public purposes, was a trust, created in the original deed, and an incident inseparable from the legal estate, and could not be detached, so that the adverse occupation must (901) defeat the title to the land, to defeat the uses for which it is held, and this the Court declared it could not do. It is true, the Court seems to confine an adverse possession, as effecting the right to a way, to private, and not public ways, but this is at variance with the cases referred to to sustain our own ruling.
Returning to the facts of the present case, can there be a more distinct and defiant assertion of a right, and of an adversary occupation to sustain it, to the premises, than is shown by this appropriation of the premises to the use of the successive occupants? Could there be stronger inferential proof of an abandonment of the public claim to the easement, than is found in the silent acquiescence of the public authorities in this assumption and exercise of ownership? This view of the case ought to have been presented to the jury, and there is error in the refusal to do so.
The Judge correctly charged, that there was no statutory bar to the prosecution, because the house was put up more than two years before the finding of the indictment, for its maintenance was itself an offence, as the nuisance was continuous as a violation of law.
There must be a venire de novo, and this will be certified, to the end that the verdict be set aside, and a trial had before another jury.
Error. Reversed.
Cited: S. v. Eastman, 109 N.C. 788; S. v. Wolfe, 112 N.C. 894; Wolfev. Pearson, 114 N.C. 634; S. v. Godwin, 145 N.C. 464, 465; Threadgill v.Wadesboro, 170 N.C. 642, 643; Haggard v. Mitchell, 180 N.C. 261, 262; Leev. Walker, 234 N.C. 695; Rowe v. Durham, 235 N.C. 161.