## STATE v. VERNON GODWIN.

(Filed 6 November, 1907).

**1. Instructions—Mandatory Charge—Questions for Jury.**

It is error in the trial Judge to charge the jury peremptorily to find the defendant guilty upon a certain phase of the testimony, without directing them to pass upon the evidence or the credibility of witnesses. The instruction should be based upon their belief of the evidence, or, which is in better form, upon their finding of the facts in accordance with the evidence.

**2. Same—Nuisance—Streets—Obstruction—Remedy of City—Remedy of Citizen.**

The act of obstructing a street, which is a public highway, by one building a fence across it, is an indictable nuisance, and abatable both by the proper town authorities and by the person who is annoyed or injured by it. Therefore, when, under an indictment for removing a fence surrounding a yard, etc. (Revisal, sec. 3673), there is evidence on the part of the defendant that he was a town marshal, duly acting, after notice, under an order from the proper authorities of a town having the power by its charter to remove it, and there is also evidence that the marshal had personally the right to remove it, irrespective of the order, and that the street had been dedicated, it was error in the court below to direct a verdict against the defendant.

**3. Streets—Adverse Possession—Right of Public.**

Possession of a street by one claiming it adversely cannot now divest or destroy the right of the public therein. Revisal, sec. 389.

CRIMINAL ACTION, tried before *Justice, J.,* and a jury, at September Term, 1906, of the Superior Court of ANSON County.

This is an indictment for injuring and removing a fence surrounding a yard, garden and cultivated field, under Revisal, sec. 3673. When the evidence was closed, the Court instructed the jury to return a verdict of guilty.

The defendant contended that the fence obstructed West Street (extended), in the town of Polkton, while the State insisted that the land surrounded by the fence had not been dedicated to the public for the purpose of being used as a street, and to these respective contentions the testimony was

addressed. There was evidence tending to show, as we think, that the property was originally owned by L. L. Polk, who extended West Street as at first dedicated or laid out by him and accepted by the town, and then sold lots—at least two— on the extended portion of the street. The defendant testified as follows: "Mr. Briley lives in my house, which is situated in the town of Polkton. The residence is situated on the Sturdivant lot, which is one square acre. There was a street in front of my house when I bought it, twenty-five or thirty years ago. Elms had been set out as shade trees along this road, which were eight or ten years old at the time. The street was opened at that time 75 or 100 yards below my house. The fence constructed by Dr. Smith ran straight across the space opened up for the street, and then ran down the space with my line for some distance and across this space again. The road had been used up to the house. It had been cut out for some distance below, but had never been used. There was a clear space, 40 or 50 feet wide, opened along my eastern line to the Austin line, now the Beachum line. All of this property was owned by L. L. Polk when I bought the Sturdivant lot and when the Sturdivant lot was bought from me, and also the second lot that I bought from L. L. Polk. Large trees had been cut out and this space opened up for a street, and has now grown up in bushes. I set out shade trees along the space which had been opened for this street eighteen or twenty years ago. The shade trees are there now—some of them 8 or 10 inches in diameter, or larger. When I bought my property this open space and the street in front of my house were called West Street (extended), or the extension of West Street. I had no ingress to my property below this fence, except along this avenue which had been opened." There was also evidence that the defendant, as town marshal, removed the fence as an obstruction to the street, under an order from the proper authorities of the town, which was incorporated by Private Acts of 1874-

'75, ch. 158. Notice of ten days was given to the prosecutor, L. C. Smith, to remove the fence before the defendant tore it down. A map of the premises was introduced, which shows the extension of West Street and a lot or lots fronting upon it. There was other evidence supporting the defendant's contention, and also evidence contradicting it and sustaining the theory of the State. In view of the charge of the Court, it is not necessary to state it. There was· a verdict of guilty, and judgment was entered thereon. Defendant excepted and appealed.

*Assistant Attorney-General Clement* for the State.
*H. H. McLendon* and *T. L. Caudle* for defendant.

WALKER, J., after stating the case: The charge of the Court was a peremptory one, by which the jury were instructed to find the defendant guilty, without any direction that they should pass upon any of the evidence or even the credibility of the witnesses. We cannot approve the form of the charge. *Manufacturing Co. v. Railroad,* 128 N. C., 284, 285. It is for the jury to find the ultimate fact of guilt upon the evidence and under the instructions of the Court as to the law. The jury were not even told that, if they believed the evidence or if they found the facts to be according to the evidence, which is the better form of expression, even when all the evidence bears one way, or if they found certain facts, they should then return a verdict of guilty, but were simply directed to find the defendant guilty. We have recently disapproved an instruction much less mandatory upon the jury than the one given in this case. *State v. Simmons,* 143 N. C., 613. See, also, *Merrell v. Dudley,* 139 N. C., 59; *State v. Garland,* 138 N. C., 675; *State v. Barrett,* 123 N. C., 753; *Sossaman v. Cruse,* 133 N. C., 470.; *State v. Green,* 134 N. C., 658; *Bank v. Pugh,* 8 N. C., 206; *Manufacturing Co. v. Railroad, supra; State v. Railway, post.*

But we think the Court erred in directing a verdict, because there was evidence in the case that the place where the fence stood was a part of West Street. It can make no difference in the result whether it was a part of the original street or of the extension. The question to be considered was whether the fence was built across a public street and thereby became an obstruction to its free use by the citizens of the town. If so, the authorities of the town had not only the right, but it was their duty to have the fence removed, under the powers vested in them by the town charter, if it constituted a nuisance; and there was evidence tending to show that the defendant himself also had the right to remove it, irrespective of the order to do so. *Wolf v. Pearson,* 114 N. C., 621; *State v. Parrott,* 71 N. C., 311; *State v. Dibble,* 49 N. C., 107. If the fence obstructed the street, which is a public highway, and thereby rendered its use less convenient, it was an indictable nuisance. *State v. Whitaker,* 66 N. C., 630; *State v. McIver,* 88 N. C., 686; *State v. Long,* 94 N. C., 896; *State v. McCarson,* 8 N. C., 446; *State v. Hunter,* 27 N. C., 369; *State v. Smith,* 100 N. C., 550; *State v. Eastman,* 109 N. C., 785; Revisal, sec. 3784 (Code, sec. 2065). And such a nuisance is abatable by the town authorities charged with the duty of keeping the streets open and in proper repair, and also by any person who is annoyed or injured by it. *State v. Higgs,* 126 N. C., 1023; *State v. Parrott,* 71 N. C., 311; *Wolfe v. Pearson,* 114 N. C., 634; *Hester v. Traction Co.,* 138 N. C., 293.

The questions whether the fence was of such a description, with reference to the character of the land it surrounded, as to come within the terms of the statute and the indictment thereunder (*State v. Biggers,* 108 N. C., 763), and whether the land had been dedicated by L. L. Polk to the use of the public for a street, and perhaps others, were for the consideration of the jury upon the evidence and under proper instructions of the Court as to the law. The question of dedication

may depend somewhat upon whether L. L. Polk platted the ground and in the map described this street, and thereafter sold lots fronting on it, as the defendant's testimony, if true, might convince the jury was done.    *Moose v. Carson,* 104 N. C., 434; *State v. Fisher,* 117 N. C., 740; *Smith v. Goldsboro,* 121 N. C., 355; *Hughes v. Clark,* 134 N. C., 460; *Milliken v. Denny,* 135 N. C., 22.

It may be inferred, from what was said on the argument and what we find in the briefs, that the Court charged as it did because it was thought not to be necessary to show any criminal intent, the doing of the prohibited act being sufficient if it was done intentionally, and that the question of title was not in controversy.    But this was not the only point upon which the case should have turned.    If it was a public street and the prosecutor obstructed it, to the inconvenience and detriment of the public, the defendant could rightfully remove it, if himself annoyed or prejudiced by the obstruction, or he could lawfully do so if acting under the order of the proper authorities, whose duty it was to keep it open. Possession of the street by any one claiming it adversely cannot divest or destroy the right of the public therein.    Acts of 1891, ch. 224; Revisal, sec. 389.    The Court, in *Moose v. Carson,* 104 N. C., at p. 434, seems to have overlooked what was decided in *State v. Long,* 94 N. C., 896, with respect to the effect of adverse possession of a highway upon the right of the public or the citizen therein prior to the act of 1891.

The material questions raised in this case should be submitted to a jury, and a new trial is ordered for that purpose.

New Trial.