BROWN, J., dissenting; ALLEN. J., concurring in the dissenting opinion.
The action is instituted by C. C. Haggard, present owner of a store abutting on a street and open triangular space in the town of Ahoskie on the western side of the present Atlantic Coast Line, formerly the Norfolk and Carolina Railroad, to restrain the defendant, J. H. Mitchell, from fencing up said space, and otherwise interfering with the use of same on part of plaintiff and general public. There were facts on evidence tending to show that prior to 1893, defendant, J. H. Mitchell, and his brother, J. A., subject to a life estate in their father, Col. George Mitchell, owned a tract of land in the vicinity where the town of Ahoskie now stands; that the Atlantic Coast Line Railroad, then the Norfolk and Carolina, was built through the land, running north and south, or near that. Several lots had been sold and improved by the purchasers, lying on the east of said railroad; that in 1890 the railroad had bought a lot on the western side for use as a station, and thereafter plaintiff claimed and offered evidence tending to show that in 1893 he and others had bought, and defendant, through an agent, A. J. Parker, had sold, lots in a block on the western side of the railroad, plaintiff's lot being *Page 257 
No. 10, and in reference to a plat, showing a street and open space extending from said lots to the railroad; that at time of plaintiff's purchase, said agent, and defendant himself, by said plat and by direct verbal assurances, had represented that this street and space would be kept open for use of the public and plaintiff and others buying lots in the locality, and plaintiff and others in like case were induced to buy and improve the property by reason of these representations.
Plaintiff claimed also that this street and open space had been used by himself and others, and the general public, as a street and highway adversely and as of right for more than twenty years next before suit brought.
Defendant claimed, and offered evidence in support of his position, that the lots had not been sold by plat or other representations as to keeping this entire space open, but the plat showed that a street of sixty feet width was contemplated by a line thereon at the time, and the remainder of this space a small triangular piece of ground nearest the railroad, has never been conveyed or dedicated or defendant or any one for him. There was also claim and evidence by the defendant to the effect that there had been no adverse occupation of this triangular space on the part of the public, but defendant and others had been under the impression that it was covered by the deed to the railroad for the station place until the latter part of 1915, when a survey disclosing that the plat in dispute was not included in the railroad lot. Defendant asserted title and entered. There was evidence, further, for plaintiff that neither defendants, nor any one for them, had listed this lot in dispute or paid taxes thereon or made any claim thereto since 1890 or 1893, until the latter part of 1915, as stated. It appeared also that the life tenant had died before suit brought, and defendant had acquired the right of his brother; that the interference complained of was by defendant, J. H. Mitchell, his brother not having been made a party, or making any present claim to the property. On issues submitted, the jury rendered the following verdict:
"1. Has the defendant heretofore dedicated to the public use the triangular-shaped piece of land described in the pleadings in this cause? Answer: `Yes.'
"2. Has the public been in the use, occupation, and enjoyment as a matter of right of the said triangular lot of land for more than twenty years prior to fencing same by defendant? Answer: `Yes.'"
Judgment on the verdict for plaintiff and defendant excepted and appealed.
It appearing that plaintiff owns and has improved the lot abutting on the open space in dispute, the authorities are to the effect that he has such a special interest as to entitle him to maintain an action in protection of his proprietary rights, and that on pertinent findings the remedy, by injunction, mandatory or otherwise, is open to him. Keys v.Alligood, 178 N.C. 16; Pruitt v. Bethell, 174 N.C. 454; McManus v. R. R.,150 N.C. 655.
And a verdict on either issue being sufficient to uphold the judgment, the results of the trial will not be disturbed, unless the defendant is able to show error both on the finding of a dedication and that of adverse user for twenty years on the part of the public. It is urged for error in the determination of the first issue, an excerpt from his Honor's charge, as follows: "If you find from the evidence and by the greater weight thereof that the defendant Mitchell, the then owner, caused, or permitted, a memorandum plat or map of the lot of land to be made and exhibited to the purchaser of the lot now owned by plaintiff, and said purchaser bought the said lot according to the way the said map or plat showed the same with streets and vacant space in front thereof, and such map or plat so showed such streets and vacant place in question, and the purchasers relied upon showing the streets and vacant space thereon, then that would be a dedication of the said street and vacant place to the use of the public and to purchaser of the lot now owned by plaintiff, and defendant having once made such dedication could not recall the same, and if you so find, you will answer the first issue `Yes.'"
It is the accepted principle with us, applicable to the trial of causes and the court's instructions to the juries therein, "that the charge should be considered as a whole in the same connected way in which it was given, and upon the presumption that the jury did not overlook any portion of it. If, when so construed, it presents the law fairly and clearly to the jury, it will afford no ground for reversing the judgment, though some of the expressions when standing alone might be regarded as erroneous." This position taken from Second Thompson on Trials, sec. 2407, is recognized as sound and just in reference to criminal causes in S. v. Exum,138 N.C. 599-619, and as to civil suits in Kornegay v. R. R.,154 N.C. 389, has been again and again approved and applied in our decisions, and in this record is in full support of his Honor's instructions on the first issue.
After explaining to the jury the nature of the controversy, and significance of the two issues, submitted, the entire charge of the court more directly pertinent to the question is as follows:
"Now, upon this first issue, it is admitted by all the parties that in 1893, J. H. Mitchell conveyed to the plaintiff and to his brother a certain lot of land described as fronting 30 x 70 feet, described in the conveyance *Page 259 
as bounded on the east by the street running between said lot and the railroad, and referred to in the description as lot No. 10 on the memorandum plat, it is admitted by both parties that A. J. Parker was agent for the defendant for the sale of those lots, and that A. J. Parker made a plat or memorandum plat showing the subdivisions of the lots.
"There is a controversy between the parties as to what this map showed in detail and as to what acts were said and done by the parties, so that upon consideration of this first issue, if you find that the defendant, or his duly authorized agent, sold the lot to the plaintiff by reference to the map, and which was exhibited, and the map showed the subdivisions into blocks and streets, and showed the street and vacant space open between the lot and railroad, and represented that the street and vacant space indicated on the map were to be kept open for the purpose of the public, and the plaintiff, relying on that, purchased the lot — this was and would continue to be a public street to the railroad, and if you find that it was so by greater weight of the evidence, you will answer the first issue `Yes.' But in consideration of the question that a dedication may be by express language, reservation or conduct showing an intention to dedicate, such conduct may operate as an express dedication, as when a plat is made showing streets and open spaces, and by showing that the map was used and referred to in the negotiations. The acts and declarations of the landowner indicating his intent to dedicate his land to the public use must be unmistakable in their purpose and decisive in their character, to have that effect. The intention to dedicate must clearly appear, though such intention may be shown by deed, by words, or by acts. If by words, the words must be unequivocal and without ambiguity. If by acts, they must be such acts as are inconsistent and irreconcilable with any construction except the assent of the owner to such dedication. That it makes no difference if the legal title to the triangular shaped piece of land in dispute should turn out to be in Mitchell, he could still have paper title to the land and the public have an easement in it, provided it be acquired in the way allowed by law. That the acquiring of an easement, in a street or public square can be by deed, by special dedication, or by use adversely for twenty years. It may be by express language, or by conduct showing an intention to dedicate, as when a plat is made showing streets, alleys, or public squares, and land sold either by express reference to such plat, or by showing that they were used and referred to in the negotiations. If you find from the evidence, and by the greater weight thereof, that the defendant Mitchell, the then owner, caused, or permitted a memorandum plat or map of the lot of land to be made and exhibited to the purchaser of the lot now owned by plaintiff, and said purchaser bought the said lot according to the way the said map or plat showed the same with *Page 260 
streets and vacant space in front thereof, and such map or plat so showed such streets and vacant place in question, and the purchasers relied upon showing the streets and vacant space thereon, then that would be a dedication of the said street and vacant place to the use of the public and to the purchaser of the lot now owned by plaintiff, and the defendant, having once made such dedication, could not recall the same, and if you so find you will answer the first issue `Yes.' That if the jury find from the evidence, and by its greater weight thereof, that the defendant, or either of them, caused a memorandum plat or map of their lands to be made, and on such memorandum plat or map there were streets and a public square laid off, and either they or their agent Parker, under their authority, in selling the lot to plaintiff and his brother, known as lot No. 10 of such memorandum plat, exhibited the map or plat to plaintiff, or those under whom he claims, that the space between his lot and the right of way of the railroad was to be kept open and remain open for the public use, and relying on such statement plaintiff bought the lot and took the deed written by Parker, and afterward signed and acknowledged and delivered by defendant and those acting with him, then that would be a dedication of the open space to the use of the plaintiff and the public, and defendants would have no right to take possession of the space and fence the same, and if you so find, you would answer `Yes' to the first issue."
If it be conceded that the excerpt from this charge objected to is not sufficiently definite in requiring that the sale should be made in reference to the plat showing thereon a vacant space "to be left open," when the charge is considered as a whole and in reference to the wholesome principle adverted to, and particularly both that which immediately precedes and follows the portion excepted to, we think it sufficiently and clearly appears that the jury were instructed in effect that in order to a dedication by plat, and assurances in reference thereto, it is required that the sale should be made in reference to the plat, showing the streets and open spaces, and under circumstances showing also an intent to dedicate the same, and the jury must have so understood it. Where these facts are accepted by the jury, and, under the charge, they have been so received and established by the verdict, the decisions apposite are to the effect that in so far as the defendant is concerned there has been an irrevocable dedication of the disputed space, and this whether the general public has thus far accepted and acted on it or otherwise, and the defendant has therefore been properly restrained. See Wittson v. Dowling, 179 N.C. 542, and cases cited.
In regard to the second issue, the court held in effect that a public easement could be acquired through an open, uninterrupted, continuous occupation and enjoyment for twenty consecutive years, adversely and *Page 261 
as of right, and submitted the question to the jury whether the user and occupation by the public of this way or place had been of the character and for the time required, and we are of the opinion that this ruling of his Honor is in accord with the true significance of our decisions on the subject, and that the cause has been properly submitted to the jury on the issue. These decisions recognizing that a square or public place is substantially a part of the public highway, and subject to the same general principles, are to the effect that such an easement can be acquired by adverse user when the occupation is so general and of such a kind as to permit the inference and apprize the owner that the public has assumed control of his property and is exercising it as a matter of right. S. v.Haynie, 169 N.C. 277; Snowden v. Bell, 159 N.C. 497; Tise v. Whitaker,146 N.C. 374; State v. Eastman, 109 N.C. 785; S. v. Long, 94 N.C. 896;Kennedy v. Williams, 87 N.C. 6; Boyden v. Achenbach, 86 N.C. 397; S. c.,79 N.C. 539; Crump v. Mims, 64 N.C. 767; S. v. McDaniel, 53 N.C. 284.
In some of the later cases on the subject, it is recognized that the existence of a public way may not be inferred by the mere user on the part of the people of a community for twenty consecutive years, but there must be evidence further that such user is openly adverse and not permissive, and in one of them, Kennedy v. Williams, intimation is given that there should be some proof of recognition of the highway on the part of the public authorities, as by the appointment of an overseer and hands, and the working of the road as a public charge. In this last case, however, the road in question had only been open and used for about six years, and while the case is undoubtedly well decided, this reference to a working by an overseer and hands is only by way of suggestion on the part of the able and learned judge who wrote the opinion, and it was by no means the effect and intention of that decision to hold that in order to establish a public way by user, there must be direct proof of formal recognition by the public authorities having charge of the matter, but such recognition and other essentials could be inferred from the occupation itself, when sufficiently general and of an extent and character as to permit the inference as stated that the public had assumed control, and were exercising it adversely and as of right. Accordingly, in the subsequent case of S. v. Eastman,109 N.C. 785, indictment for nuisance in obstructing a public square, it was expressly decided that a public square was in effect a part of the public highway; that the appointment of an overseer and hands was not an essential, and in this and several of the other authorities cited, it is fully recognized that the existence of a highway can be established by other facts showing adverse user on the part of the public. Thus, in S. v.Haynie, the correct general principle is stated as follows: "In order to establish an easement *Page 262 
for the public use over the lands of a private owner, there must be a dedication thereof by the owner, and an acceptance on the part of the proper authorities, or acts on the part of both which would, expressly or impliedly, amount thereto or presume a grant, or an acquisition thereof for the public use in some legal and recognized manner. Rev., 3784."
And in S. v. Long, 94 N.C. 896, indictment for obstructing public square, it was held, among other things that, "An easement in land may be presumed from long, continuous, and uninterrupted enjoyment, and its abandonment and discontinuance may be presumed from nonuser and obstructions acquiesced in, and submitted to without resistance, for a period sufficient to raise such presumption. This applies to public as well as private easements."
Appellant does not seriously contend that there is error as a legal proposition in the charge of his Honor on the second issue, but it is insisted that under this ruling there is no evidence to carry the case to the jury, but, in our opinion, such an objection is without merit.
From a perusal of the record and facts in evidence, it appears that in 1893, more than twenty-two years before the alleged interference by defendant, one A. J. Parker, acting as defendant's agent, sold a number of lots on the west of the railroad at Ahoskie; that this sale was made and lots bought and paid for and improved by plaintiff and others in reference to a memorandum plat, showing this disputed property was to be left open as a street, and that in the negotiations, verbal assurances were given to that effect both by Parker, the agent, and defendant himself, and that this plat having this significance was one of the principal inducements for plaintiff and others to buy. These facts are not now referred to as tending to show a voluntary dedication by defendant, a question that has been submitted and determined on a separate issue, but as tending to show the character of the user by the public, and pertinent to the second issue. That after such sale, the space, a great part of which has been an old public road, was left open and generally used by the public, both in vehicles, and on foot, and the right to do so had never been questioned or interfered with by defendants or others. Parker, the agent, testified that it was left open as a part of the streets, and was used as such. C. C. Haggard, plaintiff, testifying as to defendant's assurances, said that he bought in reference to the plat, and at the time. J. H. Mitchell, defendant, pointed out to plaintiff the lot and the street, and that the latter extended to the railroad, and further, that but for such representation he would not have purchased. Also, that Parker, the agent, told him that his lot would be a desirable one because of this open space from its front to the railroad, and that there would be no obstruction between witness and the railroad. R. J. Haggard, as *Page 263 
pertinent to this issue, testified that the space was used by the public going to and fro, that neither J. H. Mitchell or any other individual exercised any control over it, no more than any other street of the town; that the public used this as they did all other streets. J. A. Copeland, among other things, testified that he had known this place for sixty years; that there was an old road through this disputed space; that the town cleaned off the streets and straightened them up; that this triangle had been used by the public to pass back and forth, and used all the time; that it had never been listed by defendant for taxes unless he had included it as a part of his farm. J. Powell, another witness, said that this piece of land had been used by the public until J. H. Mitchell fenced it up in 1915, and before that time no one had exercised control over it except the general public. That part of it being a low place, witness and Parker had hauled trash in there, and the town had paid for it.
Another witness testified to the town's having had brickbats hauled there to fill it in. There was other testimony to the effect that in 1896 the commissioners of Ahoskie had formally adopted a plat showing the streets of the town and describing this disputed land as an open space, in this respect, an exact copy of the plat, by which the agent, Parker, had sold, and plaintiff had purchased the property. Another witness, H. W. Stokes, testified that he had lived in Ahoskie for twenty years, and had been secretary and treasurer from 1911. That the town had put a night light on this place, and had given the light and power company, and the Western Union the right to erect their poles upon it. That they had also paid for having dirt hauled on the lot as they did on other streets; that it had been used by the public, and by parties going to and coming from the station in any direction they wished, and no person had ever made any claim of ownership to it; that in the minds of all it was regarded as a street, and known as Railroad Avenue.
Throughout the record there is, to our minds, plenary evidence that the town authorities in acceptance of defendant's alleged offer, had continuously used this space as a part of the public streets of the town, adversely and of right. That during all of that period from the sale in 1893 till some time in 1915, defendant had neither made any claim nor exercised any control over the property or listed it for taxes, and on the record, the court could only have ruled that this issue also be referred to the jury for decision. From the entire facts in evidence, the verdict for plaintiff is fully justified on both issues, and, in our opinion, it is eminently proper that both the public and the abutting owners shall be protected from further molestation in the due enjoyment of their established rights.
No error. *Page 264