STATE OF NORTH CAROLINA v. BRENDA ANN FOX, T.D. 15855; EVER-
LEAN SONYA FOXX, T.D. 15857; MAVIS LOUISE GARNER, T.D. 15879;
ANNIE MARY GILCHRIST, T.D. 15897; THOMAS GILCHRIST, JR.,
T.D. 15900.

(Filed 12 June 1964.)

1. **Municipal Corporations § 24.1—**

A municipal ordinance, like a statute or other written instrument, should
not be interpreted as detached, unrelated sentences, but must be construed
as a whole.

2. **Same; Evidence § 1—**

The rule that the courts will not take judicial notice of municipal ordi-
nances does not preclude the courts, when called upon to construe an ex-
cerpt from an ordinance set out in a bill of indictment, from interpreting
the excerpt correctly by construing it with the rest of the ordinance, cer-
tainly when the entire ordinance is before the court by stipulation of the
parties.

3. **Municipal Corporations § 28—**

Where a municipal ordinance deals with the obstruction of streets inci-
dent to excavation and construction, individuals may not be prosecuted
under an excerpt from the ordinance for obstructing a street with their
persons by standing and sitting down in the portion of the street ordinarily
reserved for vehicular traffic, since the ordinance was not intended to ap-
ply to such situation.

PARKER, J., concurring in result.

APPEALS by defendants from *Crissman, J.,* August 1963 Criminal
Session of GUILFORD (Greensboro Division).

Defendants were alleged, in warrants issuing from the Greensboro
Municipal-County Court, to have violated the provisions of section
18-58 of the Code of the City of Greensboro. They demanded a jury
trial. The cases were thereupon, as required by Rule 6, § 4, C. 971,
S.L. 1955, transferred to the Superior Court. The Grand Jury returned
true bills charging the same offense. The cases were, with the consent
of defendants, consolidated for trial. The jury returned verdicts of
guilty. The court imposed a fine of $25.00 on each defendant. Each ex-
cepted and appealed.

*Attorney General Bruton and Deputy Attorney General Moody for
the State.*
*C. C. Malone, Jr., for defendants.*

RODMAN, J. Defendants rely on their motions to nonsuit. Did the
court err when it refused to allow the motions? To answer correctly,

it is necessary to ascertain exactly what crime is charged and what evidence, if any, tends to establish the commission of that crime.

The Solicitor, at the beginning of the trial, said it was stipulated by counsel for defendants that sec. 18-58 of the City Code of Greensboro, entitled "Obstructing Streets or sidewalks," reads: "It shall be unlawful to obstruct or block any street or sidewalk without a written permit therefor from the city manager." The Solicitor then said: "Attorney for the defendants may introduce any other portion of Article III, section 18, hereafter as being the ordinances of the City of Greensboro." The court, interjecting, said: "What you are doing, you are just stipulating and agreeing that this book that you have is the Code of ordinances and that any of these sections in this particular article are ordinances of the city and may be introduced without bringing someone here to prove that they are ordinances isn't that about all that you are stipulating to?" Counsel answered in the affirmative. It was further stipulated that the city manager had not issued defendants any permit as required by the quoted section.

To establish commission of the crime charged, the State offered evidence tending to establish these facts: Defendants, in company with some 250 other persons, marched "around the uptown area of the city and to the corner of Market and Elm Streets [principal thoroughfares of Greensboro] where they moved into the middle of the intersection of Elm and Market Streets." They were requested by members of the Police Department to move. They refused. Instead of moving, some sat and others squatted in the street. The part occupied by defendants "is ordinarily reserved for motor vehicle traffic, and there was vehicular traffic on this occasion which could not proceed because of the presence of people in the streets." In addition to the defendants and their 250 associates occupying the vehicular portion of the streets, there were some 400 other persons present. They were "singing and clapping their hands so loud that you couldn't hear yourself speak."

The State's evidence was sufficient to support a finding that defendants and their associates were intentionally obstructing the flow of traffic on Elm and Market Streets. This conduct constituted an indictable nuisance — *State v. Godwin,* 145 N.C. 461, 59 S.E. 132; *State v. Edens,* 85 N.C. 522 — a misdemeanor, punishable by fine, or imprisonment not exceeding two years, or both, G.S. 136-90.

Defendants were not, however, tried for violating the State statute. They were tried for violating the city ordinance, a misdemeanor, punishable by a fine not exceeding $50.00, or imprisonment not exceeding 30 days, G.S. 14-4.

Is the evidence sufficient to show a violation of the ordinance? The answer requires interpretation. Defendants, as we understand them,

concede that if read out of context subsection 58 may suffice to make unlawful the things done; but, they say, when read as a part of a single ordinance, it becomes apparent the quoted portion has no application to the facts of this case.

Proper interpretation of a document, be it statute, contract or will, requires an examination of the whole instrument. It should not be interpreted as detached, unrelated sentences. *Canteen Service v. Johnson, Com'r of Revenue,* 256 N.C. 155, 123 S.E. 2d 582; *In Re Hickerson,* 235 N.C. 716, 71 S.E. 2d 129; *State v. Barksdale,* 181 N.C. 621, 107 S.E. 505; *Weyerhaeuser Co. v. Light Co.,* 257 N.C. 717, 127 S.E. 2d 539; *Robbins v. Trading Post,* 253 N.C. 474, 117 S.E. 2d 438; *Worsley v. Worsley,* 260 N.C. 259, 132 S.E. 2d 579; *Maxwell v. Grantham,* 254 N.C. 208, 118 S.E. 2d 426.

Defendants, to permit proper interpretation and in support of their motion for nonsuit, incorporated as part of their brief a copy of section 18 of the City Code.

No part of the ordinance, except subsection 58, is incorporated in the record. We do not take judicial notice of municipal ordinances, *Shoe v. Hood,* 251 N.C. 719, 112 S.E. 2d 543; *State v. Clyburn,* 247 N.C. 455, 101 S.E. 2d 295. That does not mean that when called upon to interpret that we should deny ourselves the opportunity to answer correctly. Certainly that is true in this case, when it affirmatively appears that the Code containing the entire ordinance was on the table before the court. It was only necessary to open and read the book to put the quoted section in proper context.

Because we felt the ordinance would be of assistance in interpreting the quoted portion, counsel for the State and defendant have, at our request, stipulated and made a part of the record Articles I, II, and III, section 18 of the Greensboro Code.

Section 18 contains the ordinances relating to the streets and sidewalks. Article I, thereof, captioned "IN GENERAL" contains 23 subsections. Subsection 12, entitled "Permits required for conducting public meetings prohibited areas designated," reads:

"It shall be unlawful to conduct any public meeting or deliver any address on any street or sidewalk of the city without first obtaining a permit from the council. Application for a permit to conduct any public meeting or to deliver any address on any street or sidewalk of the city shall be in writing and filed with the city clerk at least seven (7) days before the meeting of the council at which the application will be passed upon. Any permit authorized by the council shall be subject to the following conditions: * * * (b) That the speaker not interfere with the orderly movement of vehicular and pedestrian traffic. * * * (e)

STATE *v.* FOX.

That in the interest of public safety and to insure the free passage and constant flow of pedestrian and vehicular traffic in certain congested areas of the city, it shall be unlawful for the speaker to locate himself on any of the sidewalks or other public places along, adjacent to, and in the immediate vicinity of the following streets. Davie Street, Elm Street, Eugene Street, Gaston Street, Greene Street, Market Street, Sycamore Street and Washington Street."

Defendants claimed that they and the others were gathered for the purpose of protesting and to bring their asserted grievances to the attention of the City Council.

Article III carries the title "Protection and Care." It consists of two divisions. DIVISION I is designated "In General." DIVISION 2 relates to the use of the streets by utility companies.

Subsection 58 is the first subsection of Article III; subsection 59 bears the title "Protection of Obstructions." It requires: "Every person causing or allowing any obstruction or opening on any street or sidewalk shall protect the same in the daytime by means of a red flag and at night with a sufficient number of red lights." Subsection 60, entitled "Openings to be filled," provides: "All openings made in any public alley, street or sidewalk under the provisions of this article, shall immediately upon the accomplishment of the purpose for which the same was made, be completely filled up, and the surface thereof shall be made flush with the adjacent surface of the street." Subsection 61, entitled "Permit required for placing material in streets," provides: "It shall be unlawful to place any brick, stone, lumber, sand or other building material upon any of the streets or sidewalks of the city without having first obtained from city manager permission in writing therefor and then only under such reasonable restrictions as may be prescribed by him for the public safety."

When the ordinance is read as an entirety, and when the subsection of the ordinance which the defendants are charged with violating is read as a part of a single document, it is, we think, apparent that it does not, and was not, intended to apply to situations of the kind described in this case. It follows that the motion for nonsuit should have been allowed.

Reversed.

PARKER, J., concurring in the result:

Defendants in their brief state two questions are involved:

"1. Is the ordinance, as applied in the instant case, an unconstitutional interference with the defendants' rights to freedom of

speech and peaceable assembly protected against State infringe-
ment under the due process clause of the 14th Amendment to
the United States Constitution and Article I, Section 17, of the
North Carolina State Constitution?

"2. Is the ordinance, as applied in the instant case, unconsti-
tutionally vague in that it does not apprise these defendants nor
the public generally of the offense prohibited by it?"

The entire argument in their brief of 39 pages is addressed to these
two constitutional questions. Defendants incorporated in their brief a
copy of Article III, section 18, of the ordinances of the city of Greens-
boro, North Carolina, which had not been introduced in evidence.

Chief Justice Hughes speaking for a unanimous Court said in *Cox
v. New Hampshire,* 312 U.S. 569, 85 L. Ed. 1049, 133 A.L.R. 1396:

"Civil liberties, as guaranteed by the Constitution, imply the
existence of an organized society maintaining public order with-
out which liberty itself would be lost in the excesses of unrestrain-
ed abuses. The authority of a municipality to impose regulations
in order to assure the safety and convenience of the people in the
use of public highways has never been regarded as inconsistent
with civil liberties but rather as one of the means of safeguarding
the good order upon which they ultimately depend. The control
of travel on the streets of cities is the most familiar illustration
of this recognition of social need. Where a restriction of the use of
highways in that relation is designed to promote the public con-
venience in the interest of all, it cannot be disregarded by the at-
tempted exercise of some civil right which in other circumstances
would be entitled to protection. One would not be justified in ig-
noring the familiar red traffic light because he thought it his re-
ligious duty to disobey the municipal command or sought by that
means to direct public attention to an announcement of his
opinions. As regulation of the use of the streets for parades and
processions is a traditional exercise of control by local government,
the question in a particular case is whether that control is exert-
ed so as not to deny or unwarrantedly abridge the right of assem-
bly and the opportunities for the communication of thought and
the discussion of public questions immemorially associated with
resort to public places."

The Court said in *Poulos v. New Hampshire,* 345 U.S. 395, 97 L.
Ed. 1105, 30 A.L.R. 2d 987:

"The principles of the First Amendment are not to be treated
as a promise that everyone with opinions or beliefs to express

may gather around him at any public place and at any time a group for discussion or instruction. It is a *non sequitur* to say that First Amendment rights may not be regulated because they hold a preferred position in the hierarchy of the constitutional guarantees of the incidents of freedom. This Court has never so held and indeed has definitely indicated the contrary. It has indicated approval of reasonable nondiscriminatory regulation by governmental authority that preserves peace, order and tranquility without deprivation of the First Amendment guarantees of free speech, press and the exercise of religion."

Mr. Justice Holmes said for the Court in *Schenck v. United States,* 249 U.S. 47, 63 L. Ed. 470, "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater, and causing a panic."

If lucid words mean what they unambiguously say, and if the Supreme Court of the United States adheres to what it said in the *Cox* and *Poulos* cases, the State and municipalities have authority to impose regulations in order to assure the safety and convenience of all the people in the use of their public streets and of their public highways, and defendants, and other persons like-minded, have no state or federal constitutional right of freedom of speech or of peaceable assembly for redress of grievances to wilfully sit down or squat down or lie prone on the public streets and public highways of this State, singing and shouting and clapping their hands, blocking and obstructing the convenience and safety of the people in the use of the public streets and public highways, and thereby create chaos, with the result that "liberty itself would be lost in the excesses of unrestrained abuses." If it were otherwise, then defendants, and others like-minded, could wilfully sit down, squat down, or lie prone on the public highways and airstrips and railroad tracks of this nation, and paralyze the entire transportation system of the people of the United States.

The mistake of whoever is responsible for drafting the indictments here charging defendants in this case with a violation of a city ordinance which has no application is difficult to understand. Such mistake has cost the taxpayers money.

It is an essential of jurisdiction that a criminal offense shall be sufficiently charged in a warrant or indictment. *S. v. Strickland,* 243 N.C. 100, 89 S.E. 2d 781; *S. v. Thorne,* 238 N.C. 392, 78 S.E. 2d 140; *S. v. Morgan,* 226 N.C. 414, 38 S.E. 2d 166.

The majority opinion holds that the indictments here charge no criminal offense. Jeopardy attaches only when, *inter alia,* a defendant is tried upon a valid warrant or indictment. Consequently, it is settled

law that a prosecution under an indictment that charges no criminal offense cannot bar a prosecution upon a subsequent valid indictment. *S. v. Strickland,* 246 N.C. 120, 97 S.E. 2d 450, *cert. den.* 355 U.S. 831, 2 L. Ed. 2d 43; *S. v. Jernigan,* 255 N.C. 732, 122 S.E. 2d 711; *S. v. Scott,* 237 N.C. 432, 75 S.E. 2d 154; *S. v. Speller,* 229 N.C. 67, 47 S.E. 2d 537; *S. v. Beasley,* 208 N.C. 318, 180 S.E. 598; 22 C.J.S., Criminal Law, § 246; Wharton's Criminal Law and Procedure, Anderson, 1957, Vol. I, § 139; 15 Am. Jur., Criminal Law, § 374.