**SCHUMANN et al.**

v.

**UNITED STATES.**

Civ. No. 11702.

United States District Court
E. D. New York.

June 7, 1954.

Leo A. Greenbaum, New York City, for plaintiffs.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Elliott Kahaner, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for U. S.

GALSTON, District Judge.

The plaintiffs, man and wife, complain that on February 7, 1951, at about eight o'clock in the morning, they were driving in the automobile owned by the wife and driven by the husband; that they were on Woodside Avenue in Queens County, New York, and approaching 79th Street as they were proceeding in a westerly direction. They sue for personal injuries sustained by the wife, and for damages to the car, alleging that such injuries and damages were caused by the negligence of the defendant.

Schumann testified that they were passing a mail truck on their right; that they sounded their horn while passing the truck, and that the driver of the truck, without warning, swerved the mail truck to the left in the direction of the plaintiff's car. He said that in order to avoid a collision, he turned his car to the left into the intersecting cross-street at 79th Street, and that as he did so he observed a pedestrian crossing the intersecting street; that he did not have time to stop, and that in order to avoid hitting the pedestrian he swerved his car to the curb on West 79th Street and crashed into the drug store at the corner.

The testimony of Burke, driver of the Post Office truck, was convincing. Both vehicles were traveling in the same direction. The Post Office truck, as it approached the intersection of Woodside Avenue and 79th Street reduced its speed to about eight miles an hour, for the purpose of making a left turn into 79th street. He saw the plaintiff's car abreast but so close that he could not give a signal, nor did he hear the horn signal from the plaintiff's car. He said that when the two cars were abreast they were about two feet apart, and that his truck was near the white center line dividing Woodside Avenue at that point. With the plaintiff's car to his left it is apparent that at least the left side of

plaintiff's car was on the left side of the white center line or its projection.

Schumann, when he was behind the truck, increased his speed to twenty or twenty-five miles an hour because he found the truck proceeding at a very slow rate, eight miles an hour, and he thought he could pass it. But the very fact that he was to the rear of the truck, and saw the truck slow down as it was approaching an intersection, should have given him some concern in respect to the possible movement of the truck at the intersection of Woodside Avenue and 79th Street. As I listened patiently to the testimony given by the witnesses, I could not escape the conclusion that it was the plaintiff's desire to get by the truck in circumstances which should have predicated warning, that led to the accident. There was no contact between the cars.

Schumann testified:

"Q. At the point where the Post Office vehicle started to turn towards you, where was the Post Office vehicle with respect to the center part of Woodside Avenue? A. About half the car width, to the right of the center.

"Q. In other words, no part of the Post Office vehicle was over the center part of Woodside Avenue. A. No.

"Q. About half the car width? A. Yes sir.

"Q. In feet approximately how far? A. Well, I would say it is about four feet. I would say three feet—between three and four feet.

\* \* \* \* \* \*

"Q. At the time that the vehicle that you were driving drew abreast of the Post Office vehicle, where was the left side of your car with respect to the center part of Woodside Avenue? A. About half over, sir.

"Q. How many feet was your car from the center part of Woodside Avenue? A. About the same. About four feet. About four feet—roughly speaking.

"Q. And at the time you drew abreast of the Post Office vehicle, how many feet separated the left side of the Post Office vehicle and the right side of your car? A. That I cannot say, sir. Driving on the left side of my car I could not possibly judge that.

"Q. Can you tell me how many feet separated the two cars? A. No. It seemed very close. That is all I can tell you.

"Q. Did you see the Post Office vehicle turn left? A. Yes, that's right. He turned.

"Q. At the time you saw the Post Office vehicle turn to the left, how many feet was it from you? A. I could not say sir. It was on the right hand side of my car. I am driving on the left of my car. I cannot tell you how many feet that is. He seemed to be right on top of me. That is the feeling I had.

"Q. At the time you overtook the Government vehicle, how fast were you traveling? A. Not more than 25–20 miles an hour.

"Q. How fast was the Government vehicle traveling? A. As far as I remember, about 8 miles, it seemed to me.

"The Court: Now when you drew abreast of the Government vehicle, where were the two cars with respect to the northerly part of 79th Street? A. As I remember it we were past the northerly part of 79th Street, Your Honor.

"The Court: The whole of the northerly part? A. Yes. sir. Because the two streets are opposite angles as they run into Woodside Avenue.

"The Court: You drew abreast at a point before you reached the southerly side of 79th Street, or— A. The southerly side I had reached.

"The Court: The southerly side? A. Yes.

"The Court: You had reached the southerly side? Of 79th Street? A. Yes, I had reached the southerly side. Yes sir."

\* \* \* \* \* \*

"Q. Didn't you testify before, Mr. Schumann, that the left side of the Goverment vehicle was four feet to the right of the center part of Woodside Avenue? A. Yes sir.

"Q. Is that what you meant in that photograph? A. Yes sir.

\* \* \* \* \* \*

"Q. Did you at any time see the Government vehicle cross the center part of Woodside Avenue, prior to your hitting the store? A. No sir."

The Rules of the Road, Vehicle and Traffic Law, McKinney's Consol.Laws N.Y., c. 71, Section 67, subdivision 2, provides:

"Any such person so operating a motor vehicle or motor cycle shall, at the intersection of public highways, keep to the right of the intersection of the centers of such highways when turning to the right and pass to the right of such intersection when turning to the left."

See also Wyka v. Benedicks, Sup., 41 N.Y.S.2d 127, at page 129.

 Finally it should be observed that the negligence of the driver of the Schumann vehicle must be imputed to the owner when the owner is present in the car at the time of the accident, and when the owner seeks to recover from the other negligent party for damages to the person or car of the owner. Gochee v. Wagner, 257 N.Y. 344, 178 N.E. 553.

 The plaintiff failed to establish by a preponderance of the credible evidence that the accident was attributable to any negligence on the part of the defendant.

The complaint will be dismissed and judgment granted for the defendant.