RALPH E. SHOE v. ROY M. HOOD and wife, BESSIE C. HOOD.

(Filed 29 January, 1960.)

1. **Automobiles § 50—**

    Since the owner-passenger ordinarily has the right to control and direct the operation of a vehicle, the negligence of the driver, operating the vehicle with the owner-passenger's permission or at his request, will be imputed to the owner-passenger, nothing else appearing. This rule also applies if the owner-passenger is the wife of the driver.

2. **Husband and Wife §§ 2, 3—**

    A husband is not the agent of his wife merely because of the marital relationship and neither a husband nor wife is ordinarily responsible for the torts of the other. G.S. 52-15. However, the negligence of the husband in operating a vehicle may be imputed to the wife when she is the owner thereof and a passenger therein, since such imputed negligence is not based strictly on the law of agency.

3. **Automobiles § 50—**

    While the presumption that a driver of a vehicle is the agent of the owner riding therein as a passenger is a rebuttable presumption, the burden is upon the owner-passenger to show a bailment or other circumstances under which the owner-passenger relinquishes the incidents of ownership and the right to control the operation of the vehicle.

4. **Same—**

    Evidence disclosing that the wife was the owner of an automobile and that while it was being driven by her husband to his work she was a passenger therein for the purpose of returning the car to their home so that she might use it during the day if she so desired, is sufficient to warrant an instruction that as a matter of law the husband and wife were engaged in a joint venture and the negligence, if any, of the husband was to be imputed to the wife.

5. **Appeal and Error § 42—**

    An instruction which presents an incorrect application of the law must be held for prejudicial error even though the instruction is given in stating the contention of the parties.

**6. Automobiles § 17—**

The lateral boundary lines of a street intersecting another at a dead-end must be extended entirely across the street intersected to determine the area of the intersection.

**7. Automobiles § 8, 17— Where vehicles approach intersection from opposite directions G.S. 20-154(a) applies to motorist turning left to enter intersecting street and G.S. 20-155(a) has no application.**

The evidence disclosed that defendants' vehicle entered a four-lane street with the green or caution light from a dead-end street intersecting it from the east, turned into the inside northbound lane, traveled some forty to seventy feet and attempted to enter a dead-end street intersecting it from the west, that plaintiff, traveling south on the four-lane street was following two cars on the inside southbound lane as the traffic light on the four-lane highway was turning green, that plaintiff turned into the outside southbound lane and struck defendants' car when all but two feet of defendants' car had cleared the intersection. *Held*: The evidence discloses that the two vehicles were traveling in opposite directions and meeting until defendants' vehicle turned left to enter the street intersecting the four-lane street from the west, and it was incumbent upon defendants before making a left turn across the southbound lanes to give a plainly visible signal of intention to turn, G.S. 20-155(b) and to ascertain that such movement could be made in safety, G.S. 20-154(a), without regard to which vehicle entered the intersection first. G.S. 20-155(a) has no application and an instruction in regard to the law where two vehicles approached an intersection at about the same time must be held for prejudicial error.

**8. Automobiles § 17—**

While the courts will not take judicial notice of a municipal ordinance, the rights of the parties at a street intersection at which traffic control signals are maintained will be determined upon the basis that a motorist must give the lights their well recognized meaning and give that obedience to them which a reasonably prudent operator would give, notwithstanding that the ordinance is not introduced in evidence.

**9. Automobiles §§ 8, 17—**

While a driver entering an intersection faced with a green light is not under duty to anticipate that the driver of a vehicle approaching from the opposite direction will turn left across his path of travel without giving a signal of his intention or that he will neglect to yield the right of way, the fact that he enters the intersection with the green light does not relieve him of the legal duty to maintain a reasonable lookout, keep his vehicle under proper control, and to drive his vehicle at a speed which is reasonable and prudent under the circumstances.

**10. Automobiles § 41g—**

Defendant's evidence on her counterclaim that she was riding as a passenger in a car turning left at an intersection, that the driver of the car gave a signal of his intention to turn left, and that the car was struck by a car which was proceeding in the opposite direction and entered the intersection at a fast and excessive speed under the circumstances, is sufficient to overrule the motion to nonsuit the counterclaim

even though the negligence, if any, of the driver of the car in which plaintiff was riding is imputed to plaintiff, and even though defendant entered the intersection with the green light.

**11. Negligence § 26—**

Nonsuit on the ground of contributory negligence is proper only when the evidence establishes the facts necessary to show contributory negligence so clearly that no other conclusion may reasonably be drawn therefrom.

Appeal by defendants from *Phillips, J.,* March, 1959 Civil Term, of Cabarrus.

Plaintiff alleges that he was damaged in his person and property by reason of collision between his automobile and one driven by male defendant and owned by feme defendant and in which feme defendant was riding, defendants are husband and wife, and collision proximately resulted from acts of negligence of defendants in that defendants failed to yield the right of way, failed to keep a reasonable lookout, drove recklessly and gave no signal of intention to make a left turn.

Defendants denied the allegations of negligence and pleaded contributory negligence. Feme defendant set up counterclaim for personal injury and property damage and alleged that plaintiff was guilty of actionable negligence in failing to yield the right of way, turning from straight line without ascertaining the movement could be made in safety, violating speed regulations, driving recklessly, failing to keep reasonable lookout and exercise proper control.

The collision occurred about 7:20 A. M. on 3 December 1957 at an intersection of streets in the City of Charlotte. Tryon Street runs north and south. It has four lanes, two for southbound traffic and two for northbound. The Southern Railway over-pass two-track bridge crosses Tryon Street obliquely — the bridge runs northeast and southwest. Immediately south of the bridge Sixteenth, a two-lane street, intersects Tryon at right angles from the east. This is a "T" intersection — Sixteenth does not cross Tryon. Immediately north of the bridge, Tryon is intersected from the west by Duls Lane, a two-lane street. Duls "dead ends" at Tryon and does not cross it. Duls enters Tryon at an angle from the northwest. Tryon is 40 feet wide. It is estimated that the distance from the entrance of Duls to the entrance of Sixteenth is from 47 to 70 feet. Traffic on Duls and Sixteenth is controlled at the entrances to Tryon by electric traffic lights. At the intersection with Sixteenth the traffic in the two northbound lanes on Tryon is controlled by lights. Likewise at the Duls intersection the traffic in the two southbound lanes

are controlled by lights. All the lights above referred to are synchronized so that when lights are green facing traffic proceeding into Tryon from Duls and Sixteenth, the lights facing traffic on Tryon are red in both directions, and vise versa. For one traveling southwardly on Tryon the street is definitely downgrade for the last 150 feet before reaching the Duls intersection.

Neither party pleaded or offered evidence of the city ordinance of Charlotte relative to traffic lights at intersections. The maximum speed limit in the vicinity of the collision was 35 miles per hour.

Plaintiff's evidence is briefly summarized as follows:

The weather was clear but Tryon Street was wet because the "street washer had been along." Plaintiff was traveling south in his automobile on Tryon in the inside lane toward the Duls intersection. There were two cars ahead of him. As he started down the hill the traffic light was red. When he was about 150 feet from the intersection the light changed to green. He gave a turn signal, entered the outside lane and approached the intersection at 20 to 25 miles per hour. As he reached the corner of Duls Street defendants' automobile was in the inside lane of Tryon headed north and, without any signal, defendant suddenly turned to the left, accelerated and attempted to enter Duls across plaintiff's line of travel. Plaintiff "locked" his brakes and turned right in an attempt to avoid collision but unavoidably struck defendants' automobile. Plaintiff's automobile was damaged and he received personal injuries. Male defendant was driving and feme defendant was riding in the car. Title to the car was registered in the name of feme defendant. Defendants are husband and wife. Defendants had entered Tryon from Sixteenth on "caution" light, made a sweeping turn to right, then a sweeping turn to left and the collision occurred.

Defendants' evidence shows in substance: Defendants entered Tryon from Sixteenth on the green light, proceeded to the inside lane on Tryon, turned to the right, then gave mechanical turn signal indicating a left turn into Duls. At this time there were three cars approaching from the north in the inside lane, the front car was about 125 feet from the Duls intersection. These cars were slowing for the light. After defendants had proceeded two car lengths, they turned left to enter Duls. At this time the nearest southbound car in the outside lane was 300 feet away. After defendants had made the left turn toward Duls they heard tires squeal and saw plaintiff pull from behind the second car in the inside lane and approach defendants at a high rate of speed from the outside lane. The two remaining cars in the inside lane stopped. Defendants' automobile was struck by plain-

tiff's car after all of defendants' automobile had gotten into Duls Street except about 2 feet of the rear end. Defendants' speed was from 10 to 15 miles per hour. Feme defendant's automobile was damaged and she suffered serious personal injuries.

At the close of all the evidence the court allowed motion for involuntary nonsuit of feme defendant's counterclaim.

The jury answered the issues of negligence and contributory negligence in favor of plaintiff and awarded him damages.

From judgment in accordance with the verdict defendants appealed and assigned errors.

*E. Johnston Irvin and John Hugh Williams for plaintiff.*
*Ray Rankin and Carswell & Justice for defendants.*

MOORE, J. Appellants assign as error the peremptory instruction contained in the following portion of the judge's charge: "It being admitted that the defendant, Bessie C. Hood, was the owner and an occupant of the automobile at the time and place in question and that it was being driven at the time by her husband with her consent for the common benefit and purpose of both, the Court instructs you that this would mean a joint enterprise of the two defendants at the time and place in question. The Court further charges you, as the owner of the automobile in which she was riding, the defendant, Bessie C. Hood, had equal right to direct and control its movements and conduct of her husband, the driver, in respect thereto, and was in law chargeable with responsibility for the negligent operation of the automobile. The control required is the legal right to control rather than actual physical control."

Plaintiff alleges that defendants were engaged in a "joint enterprise" and the automobile in which they were riding was "under the control and custody of both . . . (and) was used as a family car." Defendants admit that the car was owned by Bessie C. Hood and was being driven by Roy M. Hood, both were riding in the vehicle at the time of the accident and it "was used by both defendants as a means of transportation." Roy M. Hood testified defendants are husband and wife and on the occasion in question he was on his way to work and his wife was along for the purpose of returning the car to their home. He also gave testimony that he furnished the money to purchase the automobile, it was registered in his wife's name, the wife was unemployed and the car is the only one they had.

The owner-passenger of an automobile ordinarily has the right to control and direct its operation. So then, when he seeks to re-

cover from a third party damages resulting from a collision of the vehicle with some other automobile or object, the negligence, if any, of the party who is operating the automobile with the owner-passenger's permission or at his request is, nothing else appearing, imputed to the owner-passenger. *Dosher v. Hunt,* 243 N.C. 247, 251 90 S.E. 2d 374; *Harris v. Draper,* 233 N.C. 221, 225, 63 S.E. 2d 209. If the owner-passenger is the wife of the operator the same rule applies. *Harper v. Harper,* 225 N.C. 260, 265-6, 34 S.E. 2d 185; *Ross v. Burgan* (Ohio 1955), 126 N.E. 2d 592; *Schumann v. United States* (EDNY 1954), 122 F. Supp. 107; *Kline v. Barkett* (Cal. 1945), 158 P. 2d 51; *Freeman v. Scahill* (N. H. 1954), 32 A. 2d 817; *Griswold v. Newman* (N. Y. 1940), 21 N. Y. S. 2d 315; *Guy v. Union St. Ry.* (Mass. 1935), 193 N.E. 740.

It is true that the accident in the *Harper* case occurred in South Carolina and the law of that jurisdiction applied. Even so, the authorities cited in support of the legal principles pronounced therein on this point are North Carolina cases. Furthermore, it is cited with approval in *Tew v. Runnels,* 249 N.C. 1, 7, 105 S.E. 2d 108.

The rationale of the Harper decision is that "the owner of an automobile has the right to control and direct its operation . . . (and where) the owner possessed the right to control, that he did not exercise it is immaterial."

A husband is not the agent of his wife merely because of the marital relationship and neither a husband or wife is ordinarily responsible for the torts of the other. G.S. 52-15. "Strictly speaking, the person operating with the permission or at the request of the owner-occupant is not an agent or employee of the owner, but the relationship is such that the law of agency is applied." *Harper v. Harper, supra; Litaker v. Bost,* 247 N.C. 298, 101 S.E. 2d 31.

Where it is admitted or proven that the wife was owner-occupant of an automobile operated by her husband, a presumption arises that the husband was her agent in the operation, or rather the inference is permitted that any negligence on his part in the operation of the automobile is imputed to her. But such presumption or inference is not absolute and irrebuttable. But it casts upon her, who is in possession of the facts, the burden of showing a bailment, other disposition or prevailing condition by which she relinquished, for the time being, the incidents of ownership and the right to control the manner and methods of its use. *Harper v. Harper, supra; Sink v. Sechrest,* 225 N.C. 232, 34 S.E. 2d 2; *Gaffney v. Phelps,* 207 N.C. 553, 178 S.E. 231; *Ross v. Burgan, supra;*

"The test is this: Did the owner, under the circumstances dis-

closed, have the legal right to control the manner in which the automobile was being operated — was his relation to the operation such that he would have been responsible to a third party for the negligence of the driver?" *Harper v. Harper, supra;* Restatement of Torts, sec. 491 (1938).

Where the owner-occupant of an automobile claims to be a guest in the vehicle while driven by another and the evidence with respect to such contention is susceptible of conflicting interpretations, it presents a question of fact for the jury. *Harris v. Draper, supra.* "Where, however, reasonable minds can reach but one conclusion from the uncontradicted facts, the question becomes one of law for the court." 4 Cyc. of Automobile L. & P.; Blashfield, sec. 2292, p. 326.

In the instant case the facts are not in dispute. The husband purchased the automobile and registered the title in the name of the wife. It was freely used by both. The wife was the owner. It is presumed that the husband intended the automobile as a gift to her. On the occasion in question there is nothing to indicate that the wife had relinquished control. It is true that the husband was driving to his work. But the wife accompanied him to return the car to their home that she might, if she desired, have the use of it during the day. It follows that the purpose for which she accompanied her husband was to maintain control and possession of the vehicle. The court was correct in instructing the jury as a matter of law that the defendants were joint adventurers and the negligence, if any, of the husband was to be imputed to the wife.

Defendants contend the court erred in reading G.S. 20-155(a) to the jury and applying it to the factual situation in this case by instructing the jury as follows: "The plaintiff further insists and contends that if you believe his testimony that you should find that he (defendant) violated another section of the statute, that is, that his automobile and the defendant's automobile were approaching the intersection about the same time and that he failed to yield the right of way because he was on the left, the plaintiff on the right, and that in failing to yield the right of way when the automobiles were reaching the intersection at about the same time, that this was a violation of the statute and if such violation on his part was one of the proximate causes of the plaintiff's injuries and damages, then the plaintiff would be entitled to have you answer the first issue Yes."

We agree that the challenged instruction is erroneous. An instruction which presents an incorrect application of the law, even though given in stating the contentions of the parties, is error.

*Lookabill v. Regan,* 245 N.C. 500, 502, 96 S.E. 2d 421. The instruction offends in two aspects.

A careful reading of the instruction as related to the factual situation involved clearly shows that the court assumed that the intersection in which the collision occurred consisted only of that area included within the extension of the lateral boundaries of Duls Lane to the center of Tryon Street. This area is only one-half of the intersection. The intersection embraces that area lying within the lateral boundaries of Duls Lane extended to the east side of Tryon. An "intersection" is defined as "The area embraced within the prolongation of the lateral curb lines or, if none, the lateral boundary lines of two or more highways which join one another at an angle whether or not one such highway crosses the other." G.S. 20-38(1). All the testimony in the case, including that of plaintiff, shows that defendants were in the intersection first. The court could not have made the challenged application of G.S. 20-155(a) had a proper construction been placed upon the statute defining "intersection."

Furthermore, G.S. 20-155(a) has no application to the factual situation here presented. A motorist proceeding from Sixteenth Street into Tryon may enter the Duls Lane intersection only from the south. Indeed, this is what defendants did. Defendants testified that they traveled westwardly from Sixteenth to the inside northbound lane of Tryon, turned right and proceeded northwardly about two car lengths and then turned left. Plaintiff testified that when he first saw defendants their vehicle was in the inside lane of Tryon. The plaintiff said: "When I got right here, to the corner of Duls Street, I saw a 1954 Plymouth (defendants' car) coming up here going north towards Concord from Charlotte. At that time that car was on the inside lane, rather than the outside lane next to the curb; and when I got to the corner of Duls this car turned and started into Duls Avenue." So plaintiff and defendants were going in opposite directions and meeting, until defendants turned left. Where motorists are proceeding in opposite directions and meeting at an intersection controlled by automatic traffic lights, G.S. 20-155(a) has no application. A similar situation was presented in *Fowler v. Atlantic Co.,* 234 N.C. 542, 67 S.E. 2d 496 — vehicles meeting at an intersection controlled by lights. The Court said: "This is not a case where a vehicle approaching from a side street has a favored position by virtue of having entered the intersection first. (Citations omitted). Here the vehicles were meeting as they approached the intersection. Hence, the applicable statutes are G.S. 20-155(b) and G.S. 20-154." In the instant case, it was incumbent upon defend-

ants, before making a left turn across the southbound lanes, to give a plainly visible signal of intention to turn (G.S. 20-155(b)) and ascertain that such movement could be made in safety (G.S. 20-154(a)). This, without regard to which vehicle entered the intersection first.

It is quite possible that the erroneous application of G.S. 20-155(a) proceeded from a misinterpretation of the holding in *Hudson v. Transit Co.*, 250 N.C. 435, 108 S.E. 2d 900. This case involved a divided highway. There was a grass plot 30 feet wide separating the eastbound and westbound lanes. Another highway crossed at right angles. The court treated the two crossings as separate intersections. The vehicles involved approached and entered the intersection at right angles to each other. One of the Vehicles did not have a view of the controlling lights. The Court declared, with respect to this vehicle, that the driver was "charged with the duty to yield the right of way to vehicles moving in eastbound traffic . . . that is, traffic approaching the *intersection* from his right at approximately the same time." (Emphasis ours). The controlling distinction between this case and the instant case is that in the former the duty relates to one entering the intersection, in the latter the duty relates to one already in the intersection and intending to turn. The second paragraph of 20-38(1) now reads in part: "Where a highway includes two roadways thirty (30) feet or more apart, then every crossing of each roadway of such divided highway by an intersecting highway shall be regarded as a separate intersection." Chapter 1087, Session Laws 1957.

It is observed that neither party to the action *sub judice* pleaded or offered in evidence the city ordinance relating to traffic lights at street intersections. G.S. 20-158(c) is inapplicable to an intersection controlled by traffic light located within a municipality. The Court will not take judicial notice of a municipal ordinance. Even so, where the evidence discloses that there are automatic traffic lights at a street intersection within a municipality, when the ordinance establishing them has not been pleaded or proved, "the rights of the parties will be determined upon the basis that motorists must give the lights their well recognized meaning and give that obedience to them which a reasonably prudent operator would give." *Hudson v. Transit Co., supra; Wilson v. Kennedy,* 248 N.C. 74, 79-80, 102 S.E. 2d 459; *Funeral Service v. Coach Lines,* 248 N.C. 146, 151, 102 S.E. 2d 816; *Williams v. Funeral Home,* 248 N.C. 524, 528, 103 S.E. 2d 714.

After the jury had deliberated for some time they returned to

the courtroom and the foreman asked the judge the following question: "We would like to know if anyone has a right to go ahead on a green light when the road is obstructed or when there is a car going in front of him; does he have a right to keep going when the light turns green?"

Defendants assign as error the court's instruction in response to the question, as follows: "When the light is green in the direction which they are traveling they have a right to proceed in that direction and they have a right to assume that anyone that is going to enter an intersection will let them proceed into the intersection without crossing in front of them. In other words, no one is charged with the duty of anticipating negligence on the part of anyone else."

We agree that the court committed error in so responding. The fault in the instruction lies in its inadequacy. It is correct as far as it goes. It gives only the portion of the applicable rule favorable to plaintiff. It is true that the operator of a motor vehicle is under no duty to anticipate negligence on the part of others in the absence of anything which should give notice to the contrary; the law does not impose upon a driver facing a green light the duty to anticipate that one proceeding in the opposite direction and intending to make a left turn across his path of travel will negligently fail to give a signal of this intention or neglect to yield the right of way. But the fact that he may have a green light facing him, as he approaches and enters an intersection where traffic is controlled by automatic traffic lights, does not relieve him of the legal duty to maintain a reasonable lookout, keep his vehicle under proper control and to drive his vehicle at a speed which is reasonable and prudent under the circumstances. *Funeral Service v. Coach Lines, supra; Wilson v. Kennedy, supra; Hyder v. Battery Co.*, 242 N.C. 553, 557, 89 S.E. 2d 124; *Cox v. Freight Lines*, 236 N.C. 72, 78, 72 S.E. 2d 25.

Feme defendant asserts that the court erred in granting plaintiff's motion for nonsuit of her counterclaim. The position is well taken. If the jury should believe defendants' evidence, hearinbefore summarized, and reject plaintiff's showing, they would be justified in returning a verdict in favor of the feme defendant awarding her damages. The evidence in the case is in direct conflict. Nonsuit on the ground that a party is guilty of contributory negligence as a matter of law will be granted only when the evidence of such party establishes the facts necessary to show contributory negligence so clearly that no other conclusion may reasonably be drawn therefrom.

*Keener v. Beal,* 246 N.C. 247, 252, 98 S.E. 2d 19, and cases there cited.

The ruling of the trial court on the motion for nonsuit of defendant's counterclaim is reversed and a new trial is ordered.

New trial.