**In re TARA OF NORTH HILLS, a North Carolina Partnership, Debtor.**

**No. 89–246–CIV–5–BR.**

United States District Court, E.D. North Carolina, Raleigh Division.

Aug. 9, 1989.

Dean A. Shangler, Berman & Shangler, Durham, N.C., for Huangs.

Barney K. Huang and Lindy W. Huang, pro se.

Trawick H. Stubbs, Jr., New Bern, N.C., for Huangs in bankruptcy proceeding.

N. Hunter Wyche, Smith, Debnam, Hibbert & Pahl, Raleigh, N.C., for W. Garland Avent—Gen. Partner.

Mark C. Kirby and Samuel T. Wyrick, III, John Logan, Wyrick, Robbins, Yates, Ponton & Kirby, Raleigh, N.C., formerly for Huangs.

David W. Warren, Poyner & Spruill, Rocky Mt., N.C., John L. Shaw, Poyner & Spruill, Raleigh, N.C., for Pioneer Savings Bank.

David W. Boone, Raleigh, N.C., Trustee.

## ORDER

BRITT, Chief Judge.

This matter is before the court on the appeal by Barney K. Huang and Lindy W. Huang (hereinafter "the Huangs" or "Dr. and Mrs. Huang") from the bankruptcy

court's February 1, 1989 order denying the Huangs' motion to set aside or revoke the consent order entered by the court on April 23, 1987 (hereinafter "the Consent Order"). This appeal is brought pursuant to 28 U.S.C. § 158(a) which provides that the district courts of the United States have jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under 28 U.S.C. § 157.

## STATEMENT OF THE ISSUES

By order filed February 1, 1989, United States Bankruptcy Judge Thomas M. Moore denied the Huangs' motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (hereinafter "Rule 60(b)") to revoke a consent order entered by the bankruptcy court on April 23, 1987. On appeal, the Huangs contest this ruling.

Specifically, the Huangs requested the bankruptcy court to relieve them from the terms of the April 23, 1987 Consent Order on the basis that the order resulted from alleged fraud on the part of the Huangs' former attorneys.

A Rule 60(b) motion (made applicable in bankruptcy proceedings by Bankruptcy Rule 9024) is addressed to the trial court's judicial discretion,[1] and the court's ruling thereon is "a matter normally beyond appellate review." *Seismograph Service Corp. v. Offshore Raydist, Inc.*, 263 F.2d 5, 23 (5th Cir.1958). The trial court's decision can be reversed on appeal *only* upon a showing of a *clear* abuse of that discretion. *See, e.g., Compton v. Alton S.S. Co.*, 608 F.2d 96 (4th Cir.1979). *See also Pagan v. American Airlines, Inc.*, 534 F.2d 990 (1st Cir.1976); *Virgin Islands Nat'l. Bank v. Tyson*, 506 F.2d 802 (3rd Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Smith v. Missouri Pac. R. Co.*, 615 F.2d 683 (5th Cir.1980); *Marshall v. Monroe & Sons, Inc.*, 615 F.2d 1156 (6th Cir.1980); and

*Bradford Exchange v. Trein's Exchange*, 600 F.2d 99 (7th Cir.1979).

In addition, where a determination whether to grant or deny relief under Rule 60(b) depends upon a discretionary appraisal of the facts of a particular case, the trial court's findings of fact must be accepted on appeal unless clearly erroneous. See Bankruptcy Rule 8013.

A trial court's exercise of discretion in light of supportable facts cannot be disturbed unless there was a clear abuse of that discretion. *Inmates of Allegheny County Jail v. Wecht*, 754 F.2d 120 (3d Cir.1985). The rationale behind this rule is clear, and is succinctly set forth in *Atchison, Topeka and Santa Fe Railway Co. v. Barrett*, 246 F.2d 846, 849 (9th Cir.1957).

> The trial judge saw and heard the plaintiff; saw his twitchings, what they were and what they were not.... He saw or heard the other matters relied on by appellant; he felt the "climate" of the trial.... The Court of Appeals should not and will not substitute its judgment for that of the trial court, nor reverse the lower court's determination save for an abuse of discretion.

In order to demonstrate an abuse of discretion and prevail on a motion to vacate an order, an appellant cannot simply show that the court below properly could have vacated it. "Instead, [the] appellant must demonstrate a justification so compelling that the court was required to vacate ... [the] order." *Solaroll Shade and Shutter Corp., Inc. v. Bio–Energy Systems, Inc.*, 803 F.2d 1130, 1132 (11th Cir.1986).

### I

## STATEMENT OF THE CASE

### A. *Nature of the Case*

Tara of North Hills, a North Carolina general partnership owning a 150–unit apartment project in Raleigh known as Tara of North Hills, became a debtor under

---

1. The language in Rule 60(b)—i.e., "the court *may* relieve a party ... from a final judgment, order, or proceeding ..." (emphasis added), indicates that the court's decision whether to grant relief from the judgment, order, or proceeding is discretionary. *Villareal v. Braswell Motor Freight Lines, Inc.*, 545 F.2d 978 (5th Cir. 1977).

Chapter 11 (11 U.S.C. § 1101 *et seq.*) after one of its three general partners, W. Garland Avent (hereinafter "Avent"), filed an involuntary petition on February 19, 1987. An order for relief was entered by the bankruptcy court on March 27, 1987.

Thereafter, the Huangs filed a motion to vacate the order for relief and dismiss the Chapter 11 case. At or about the same time, Pioneer Savings Bank, Inc. (hereinafter Pioneer) filed motions (i) to modify the automatic stay; (ii) for adequate protection; and (iii) for an order restricting the use of cash collateral. On April 14, 1987, prior to these motions being heard by the bankruptcy court, Pioneer, the debtor's largest creditor (represented by the law firm of Poyner & Spruill), and the debtor's general partners—Avent (represented by the law firm of Smith, Debnam, Hibbert & Pahl) and the Huangs (and their then attorneys, the law firm of Wyrick, Robbins, Yates, Ponton & Kirby)—attended a hearing before the bankruptcy court and in the course thereof negotiated and agreed to the appointment of a Chapter 11 trustee for the partnership, thus rendering it unnecessary for the bankruptcy court to decide the aforementioned motions. The terms of the parties' agreement were memorialized in a Consent Order signed by each of the general partners, counsel for Pioneer, counsel for Avent, counsel for the Huangs, and the court on April 23, 1987. Pursuant to this Consent Order, David W. Boone was appointed Chapter 11 trustee.

Concluding that reorganization under Chapter 11 was not feasible, the trustee filed a motion on July 2, 1987, requesting that (i) the case be converted to one under Chapter 7 (11 U.S.C. § 701 *et seq.*, and (ii) the court approve the public sale of the debtor's property. Appropriate notice of this motion and the notice of public sale was given pursuant to Bankruptcy Rule 2002.

The Huangs objected to the sale of the property and, accordingly, a hearing was held on August 3, 1987. Subsequently, the court entered a memorandum opinion and order converting the case to one under Chapter 7, appointing David W. Boone as

trustee in the Chapter 7 case, allowing the trustee's motion to sell the property at a public sale, and allowing the trustee's motion to sell the property free and clear of liens. No motion to reconsider or appeal of this order was filed by the Huangs.

The public sale of the Tara of North Hills property was held on August 7, 1987, and Pioneer was the successful bidder at Two Million Four Hundred and Seventy–Five Thousand Dollars ($2,475,000). The Huangs filed an objection to confirmation of the sale; however, they failed to pursue their objection at the August 31, 1987 confirmation hearing, although present. Thereafter, the sale to Pioneer was confirmed, and an order confirming the sale was entered on September 1, 1987. No motion to reconsider or appeal of that order was filed by the Huangs, and the trustee executed a trustee's deed to Pioneer on September 11, 1987, which was properly and duly recorded.

On or about September 29, 1988, nearly one and a half years after its entry, the Huangs, through their counsel (then the law firm of Stubbs, Perdue, Chestnutt, Wheeler & Clemmons), filed a motion to set aside the April 23, 1987 Consent Order. Pioneer filed a response thereto and, after allowing a request for a continuance by the Huangs, a hearing before the bankruptcy court was held on the motion on January 5, 1989. By order filed February 1, 1989, the bankruptcy court denied the Huangs' motion to set aside the Consent Order. It is from this order that the Huangs have filed the instant appeal.

### B. *Statement of Facts*

The language of the Consent Order was negotiated by counsel for the parties at an April 14, 1987 hearing before the bankruptcy court. The terms of the parties' agreement were reduced to writing.

By April 22, 1987, it, signed by Avent and his counsel and by Warren as counsel for Pioneer, had arrived at the offices of Wyrick and Kirby, counsel for the Huangs. On or about April 22, 1987, Mrs. Huang was telephoned by Wyrick's office and told to come pick up the consent order.

After picking up the consent order, Mrs. Huang read it over and had some concerns about some of its provisions; as a result, she conferred with some attorneys of her acquaintance and others she felt to be knowledgeable about contracts. She also attempted to speak with Wyrick or Kirby, but was unable to reach either and did not receive a return call from either. After these consultations, Mrs. Huang and Dr. Huang typed in the following additional language to paragraph 5 of the Consent Order. (Note: the added language is underlined.)

5. In addition [to] the duties listed above, the trustee shall make a diligent effort to negotiate a sale of the collateral to a willing purchaser. The sale shall be subject to the provisions of the Bankruptcy Code and the Bankruptcy Rules[.] and shall not occur unless and until approved by this Court after hearings at which evidence as to value and feasibility of the sale shall be considered. If the sale is authorized, commissions and legal and trustee fees shall not exceed $10,000.00; but if the sale is authorized to a general partner of the Debtor, then no such commissions or fees shall be paid.

Each of them initialed the addition to the Consent Order, and signed it.

On April 23, 1987, at around 9:00 a.m., Mrs. Huang delivered to Wyrick and Kirby's office the Consent Order. Upon her arrival at that office, Mrs. Huang was informed by the receptionist that neither Wyrick nor Kirby was in the office or available and that instead John Logan, an associate of that firm, would speak with her. Soon, Mr. Logan came out, and Mrs. Huang gave him the Consent Order.

The hearing evidence is in conflict as to what transpired at Wyrick and Kirby's office after Mrs. Huang's delivery of the Consent Order to Mr. Logan and prior to Mr. Logan's submitting the Consent Order to Judge Small sometime before 1:00 p.m. on April 23, 1987. Mrs. Huang testified as follows.

### Mrs. Huang's Testimony

Upon delivering the Consent Order to Mr. Logan, Mrs. Huang pointed out to him the language she and Dr. Huang had inserted therein prior to their signing it. When Mr. Logan looked at the language added to the Consent Order, he informed Lindy Huang that, "You cannot do that." Thereafter, Mr. Logan left Mrs. Huang's presence for a few minutes and returned with a ruler with the intent to line out the language that Dr. Huang and Mrs. Huang had added to the Consent Order. Before Mr. Logan did so, Mrs. Huang asked him for a photocopy of it the way she had given it to him, and Mr. Logan went and made the copy and gave it to her. Mrs. Huang then left Wyrick and Kirby's office with her copy of the order she had delivered to Mr. Logan.

Before Mrs. Huang left, Mr. Logan announced he was going to line out the added language, but Mrs. Huang did not see him line it out before she left or see a copy of the Consent Order with the language lined out until sometime after it had been signed by Judge Small and filed with the court.

At no time while she was at Wyrick and Kirby's office did Mrs. Huang call Dr. Huang and talk to him, nor was she asked by Mr. Logan to either stay and initial any crossing out of language he intended to do or to take the consent order in any form to Dr. Huang. Mr. Logan never discussed with Mrs. Huang the nature of the proposed consent order, but merely insisted that he needed to delete the modifications so that he could deliver it to Judge Small as he had been instructed to do by Wyrick. Further, Logan never suggested to her to wait and discuss the consent order with either Wyrick or Kirby.

At no time did Mrs. Huang consent to the marking out of the lines that she and Dr. Huang had added and each initialed; at no time was Dr. Huang at Wyrick's office on that date; at no time did Dr. Huang consent to the marking out of the lines added to the consent order by him and Mrs. Huang; and at no time was Mr. Logan her lawyer or doing anything other than merely accommodating Wyrick and Kirby upon whom she had previously relied for legal

advice in regard to the Tara of North Hills proceedings.

Mrs. Huang did not agree to the terms of the consent order absent the language added by her and Barney Huang and informed Logan of that fact.

On cross examination, Mrs. Huang explained that in part she spoke to other attorneys about the draft consent order because she had lost some trust in Wyrick and Kirby because it appeared to her that Wyrick and Kirby had somehow failed to respond to Avent's involuntary petition filed on February 19, 1987, to her detriment, even though the Certificate of Service attached to the Summons to Debtor and Involuntary Petition shows service upon Wyrick on February 23, 1987.

Mrs. Huang also stated that while she was at Wyrick and Kirby's office on April 23, 1987, she did not know of Dr. Huang's whereabouts.

### Mr. Logan's Testimony

Mr. Logan testified about his delegated duties in regard to the Consent Order and the events occurring between Mrs. Huang's delivery of the Consent Order to him and his submission of it to Judge Small on April 23, 1987, as follows.

In April 1987, Mr. Logan was an associate of the law firm of Wyrick, Robbins, Yates, Ponton, and Kirby. On April 22, 1987, Wyrick called Mr. Logan into Wyrick's office and requested that on April 23, 1987, Mr. Logan receive a Consent Order from Dr. Huang and Mrs. Huang which he supposed would have been signed by them and deliver that order to Judge Small before 1:00 p.m. on April 23, 1987, for entry by the bankruptcy court. Mr. Logan, although he had never been substantively involved in the case, was asked to do this essentially clerical task by Wyrick because both Wyrick and Kirby had to be out of town on April 23, 1987. Mr. Logan understood from Wyrick that the order should be submitted to Judge Small by 1:00 p.m. on April 23, but did not know any reasons there might have been behind that deadline.

Mr. Logan met with Mrs. Huang at Wyrick and Kirby's office on the morning of April 23, 1987, and he recalled the meeting began at about 10:30 a.m. but admitted that it may have begun at around 9:00 a.m. The meeting lasted until sometime after 12:00 noon.

After Mrs. Huang handed him the Consent Order, Mr. Logan discovered there was some language added to it which had been initialed by Dr. Huang and Mrs. Huang. Mr. Logan told Mrs. Huang that a consent order requires consent by all the parties thereto to everything in it, that the extra language that Dr. Huang and Mrs. Huang put in the consent order had not been agreed to by the other parties who had already signed the order, and that, therefore, Mr. Logan could not sign the order on behalf of Wyrick and Kirby and could not and would not deliver it to the bankruptcy court in that form. Mr. Logan further told Mrs. Huang that she and her husband had to choose whether they wanted to leave the consent order with the added language, in which event he would not sign it and would not take it to the court to be entered; or they could agree to returning the order to its original form, and he would sign it for Wyrick and Kirby and submit it to the court.

Mr. Logan then left Mrs. Huang and tried to contact both Wyrick and Kirby but was not successful. He returned then to Mrs. Huang and told her that he had been told to get the order submitted by 1:00 p.m. that day.

Mrs. Huang then said she wanted to talk to her husband about it, picked up the phone, dialed, and carried on a conversation with someone in a foreign language which Mr. Logan did not understand. When Mrs. Huang got off the phone, Mr. Logan asked her if she spoke with her husband, and she said she had. Then Mr. Logan asked her "Well, what is your decision. She answered Well, we think it's ok to take the language out. Let's take it out, and you can sign it, and take it down to the judge."

Mr. Logan then got a ruler from the receptionist and said:

Mrs. Huang, are you telling me that you, acting for yourself, and you, acting for your husband, are authorizing me to mark out this language in the Consent Order and return it to its original form?

Mrs. Huang then said "Yes, I am." He then marked out the language that Dr. Huang and Mrs. Huang had added by lining through it and said:

You're authorizing me to take this down to the judge, and to have it entered now, and to sign it as your attorney on behalf of Mr. Wyrick and Mr. Kirby, and ask the judge to enter it.

Mrs. Huang replied in the affirmative. Mr. Logan then asked her if she was acting on behalf of herself and her husband, and that she replied that she was. Therefore, Mr. Logan signed the order for Wyrick and Kirby and asked Mrs. Huang if she would like a copy of it. Mrs. Huang told him she did not want a copy, and he thanked her for her time.

Mr. Logan did not ask Mrs. Huang to initial the lining out after it was accomplished. He personally delivered the document to Judge Small.

On cross examination, Mr. Logan testified that when Mrs. Huang made a telephone call from the conference room, only he and Mrs. Huang were present in that room and the door was closed. Mr. Logan stated that Mrs. Huang told him she was going to call her husband before the phone call and that she had a conversation on the telephone completely in some foreign tongue that lasted about 3 minutes; in addition, Mr. Logan did not recall whether or not Mrs. Huang was holding or looking at the consent order while she spoke on the phone.

He did not understand a single word that Mrs. Huang said during this telephone conversation.

Finally, Mr. Logan did not recall his exact discussion concerning the added language with Mrs. Huang:

But what I kept hitting on, and if I said it once, I must have said it twenty times before she made the determination for herself and for her husband that they wanted to return the Order to its original form, and that the decision was up to her and her husband as to whether they wanted to change the Order back to the way it was, and have me take it to the judge, and ask that they enter, and that I sign it on behalf of Mr. Wyrick and Mr. Kirby, and the firm, or whether she wanted to leave it the way it was now. And if she decided to do that, I refused to sign it, and I refused to take it to the judge.

It is undisputed that upon delivering the Consent Order to Judge Small for his signature, Mr. Logan explained the circumstances surrounding the stricken language to Judge Small. That same day, April 23, 1987—as reflected on the certificate of service—Mr. Logan delivered to the Huangs a fully executed and file stamped copy of the Consent Order. At the latest, the Huangs received this copy one or two weeks thereafter.

### Discussion

In its discretionary appraisal of the facts before it, the bankruptcy court found that the Huangs agreed to the original language of the Consent Order and authorized their attorney to submit it, as originally written, to the bankruptcy court for signature and filing. This finding is not clearly erroneous, as it is supported by facts in the record.

The Consent Order entered by the bankruptcy court was based upon stipulations "between Pioneer and Tara of North Hills, a North Carolina limited partnership, by and through their general partners who are Barney K. Huang and Lindy W. Huang (hereinafter 'Huangs') and Garland Avent (hereinafter 'Avent')." See p. 1 of the April 23, 1987 Consent Order. The bankruptcy court's finding that Mrs. Huang, acting individually, authorized Mr. Logan to delete the language which had been added by her and her husband, and that she thereby consented to the original wording of the Consent Order, is supported by facts in the record. In so finding, the bankruptcy court simply chose to believe the testimony of Mr. Logan over that of Mrs. Huang. As indicated previously, Bankruptcy Rule 8013 mandates that the district

court give due regard to the bankruptcy court's opportunity to judge the credibility of the witness. *See also, Barrett, supra,* 246 F.2d at 849.

The Huangs argue that, although Mrs. Huang may have consented for herself, there is no evidence from which it might be found that she was authorized to act as the agent for her husband, Dr. Huang, in consenting to Mr. Logan's course of action. The court disagrees for the following reasons.

█ Whereas a wife is not the agent of her husband strictly by force of the marital relationship, *see, e.g., Cline v. Cline,* 258 N.C. 295, 128 S.E.2d 401 (1962), *Rushing v. Polk,* 258 N.C. 256, 128 S.E.2d 675 (1962), and *Shoe v. Hood,* 251 N.C. 719, 112 S.E.2d 543 (1960), the court believes the mutual confidence usually associated with such relationship to be relevant to the issue of agency, just as would friendship or enemity between persons. Furthermore, Dr. and Mrs. Huang in fact were general partners in the Tara of North Hills Partnership and Mrs. Huang, as Dr. Huang's partner, had acted as the latter's agent in conjunction with the partnership business. Wyrick and Kirby represented the joint interests of Dr. and Mrs. Huang in regard to such business during the negotiation of the terms of the Consent Order. Dr. and Mrs. Huang's interests were coincident and without conflict. In submitting the Consent Order to the Huangs for their review, Wyrick and Kirby dealt with Dr. and Mrs. Huang without distinction between the two.

Additionally, Dr. and Mrs. Huang jointly agreed upon the language which Mrs. Huang typed on the Consent Order on their joint behalf. Mrs. Huang went to the offices of Wyrick & Kirby, acting for herself and as her husband's agent, to effectuate delivery of the Consent Order. When Mrs. Huang was advised by Mr. Logan that the added language would have to be deleted, she stated that she wanted to talk to her husband about such deletion, a desire con-

sonant with their mutual interests and her acting on Dr. Huang's behalf in dealing with their attorneys. She thereafter telephoned someone and carried on a conversation with some person in a foreign language. Both Dr. Huang and Mrs. Huang speak Chinese.

Upon completion of her conversation, Mrs. Huang said she had spoken with her husband. Such identification suffers no hearsay impediment. Mrs. Huang confirmed that she was acting on her husband's behalf.

Having expressed her desire to confer with her husband, and having done so, it is reasonable to infer that she followed his directives. The record is void of any reason for her to have done otherwise. Mr. Logan reasonably relied upon Mrs. Huang's representation that she spoke for the Huangs jointly.

Almost one and one-half years' time elapsed between the date of entry of the Consent Order (a copy of which was delivered to the Huangs within a fortnight) and the date the motion to set aside the Consent Order was filed. During such period, Dr. Huang never made known any objection thereto to the other parties. Accepting Mr. Logan's testimony, it is beyond cavil that Mrs. Huang acted as her husband's agent when she and Mr. Logan met.

█ For the foregoing reasons, the court finds that the findings of fact and conclusions of law found by the bankruptcy judge are not clearly erroneous and therefore AFFIRMS the bankruptcy court's denial of appellant's motion to set aside the consent Order of April 23, 1987.

SO ORDERED.[2]

---

**2.** This court also affirms the bankruptcy court's denial of Huangs' motion as untimely filed. The court notes in this regard as follows:

The Consent Order was negotiated by counsel for the parties at an April 14, 1987 hearing before the bankruptcy court. It is disputed as

to whether or not the Huangs became familiar with its terms at that time. The Consent Order was incorporated into a written agreement, which was received (and ex parte added to) by the Huangs on April 22, 1987. It was subsequently filed by Huangs' counsel (with the Huangs' addition deleted by said counsel) on the following day. Mrs. Huang was aware of said deletion at the time the Consent Order was filed. Within two weeks of such filing, the Huangs received a copy of the Consent Order as filed. On August 7, 1987, the property was sold pursuant to the Consent Order. The Huangs filed an objection to the confirmation of the sale; they failed, however, to pursue their objections at the August 31, 1987 confirmation hearing, although present. The order confirming the sale was entered on September 1, 1987. No motion to reconsider or appeal of that order was filed by the Huangs, and a trustee's deed for the property was delivered and recorded on September 11, 1987. On September 29, 1988, nearly one and one-half years after its entry, the Huangs filed the instant motion to set aside the April 23, 1987 Consent Order.

Huangs' motion to set aside or revoke the Consent Order was made pursuant to F.R.Civ.P. 60(b). Rule 60(b) requires that motions predicated upon reasons (1), (2), and (3) thereunder "shall be made ... not more than one year after the ... order ... was entered...." Huangs' motion, therefore, was untimely and time barred as to such reasons. As to Rule 60(b) reasons (4), (5) and (6), "the motion shall be made within a reasonable time." In the view of this court, Huangs' motion made September 29, 1988, was not within the parameters of the rule. They had more than ample notice of the Consent Order and its terms and time to voice their objections thereto prior to the September 1, 1987 order confirming the property sale. Dr. Huang's objections remain unvoiced to this day, except through the testimony of his wife. Huang's failure to timely object demonstrates the equitable predicate for the exercise of the bankruptcy court's judicial discretion, under Rule 60(b), and the manner exercised, to-wit, adversely to the Huangs. Such discretion has not been shown to have been clearly abused.